[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2023-OHIO-3851

THE STATE OF OHIO, APPELLEE, *v*. GWYNNE, APPELLANT.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851.]**

*Criminal law—Sentencing—R.C. 2929.14(C)(4)—Consecutive-sentence findings—R.C. 2953.08(G)(2)—Appellate review of consecutive sentences—Motion for reconsideration granted and court of appeals' judgment upholding appellant's consecutive prison terms affirmed.*

(No. 2021-1033—Submitted February 28, 2023—Decided October 25, 2023.)

APPEAL from the Court of Appeals for Delaware County,

No. 16 CAA12 0056, 2021-Ohio-2378.

ON MOTION FOR RECONSIDERATION.

_____

**KENNEDY, C.J., announcing the judgment of the court.**

**{¶ 1}** This matter is before this court as a result of a motion for reconsideration filed by appellee, the state of Ohio.

{¶ 2} Appellant, Susan Gwynne, commenced this case in this court by filing a discretionary appeal from a judgment of the Fifth District Court of Appeals. A majority of this court reversed the court of appeals' judgment affirming Gwynne's 65-year sentence. *State v. Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, ¶ 1-2 ("*Gwynne IV*"). This court held that the findings required by R.C. 2929.14(C)(4) to impose consecutive prison sentences on an offender "must be made in consideration of the aggregate term to be imposed." *Gwynne IV* at ¶ 1. Additionally, this court concluded that appellate review of consecutive sentences did not require appellate courts to defer to the sentencing court's findings; rather, this court explained that "appellate courts * * * review the record de novo and decide whether the record clearly and convincingly does not support the consecutive-sentence findings." *Id.*

{¶ 3} "This court has the authority to grant motions for reconsideration filed under S.Ct.Prac.R. 18.02 in order to 'correct decisions which, upon reflection, are deemed to have been made in error.' " *State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 1, quoting *State ex rel. Huebner v. W. Jefferson Village Council*, 75 Ohio St.3d 381, 383, 662 N.E.2d 339 (1995). In seeking reconsideration, the state maintains that the majority in *Gwynne IV* decided the case on an issue that was not raised by the parties, that the standard of review articulated by the majority was internally inconsistent and misstates the law, and that the decision to remand the case to the court of appeals rather than the trial court was improper.

{¶ 4} Gwynne did not raise a proposition of law asserting that R.C. 2929.14(C)(4) requires both trial and appellate courts to consider a defendant's aggregate prison term when imposing or reviewing consecutive sentences. That issue also was not addressed by Gwynne in her briefs or at oral argument. Moreover, the standard of review established by the majority in *Gwynne IV* is contrary to the plain language of R.C. 2953.08(G)(2). The majority announced a

2

de novo standard of review, but the statute requires an appellate court to defer to a trial court's consecutive-sentence findings.

{¶ 5} The plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record. Here, the appellate court properly applied that standard and could not clearly and convincingly find that the record did not support the trial court's findings for consecutive sentences. For these reasons, we grant the motion for reconsideration, vacate this court's decision in *Gwynne IV*, and affirm the judgment of the Fifth District Court of Appeals.

## Facts and Procedural History

{¶ 6} In *Gwynne IV*, this court summarized the relevant facts of this case:

> For approximately eight years, Gwynne—either in her position as a nurse's aide or while posing as one—stole items of sentimental and monetary value from elderly residents of nursing homes and assisted-living facilities. Gwynne was indicted on 86 felony counts—31 counts of second-degree burglary, 4 counts of third-degree theft, 12 counts of fourth-degree theft, 27 counts of fifth-degree theft, and 12 counts of fifth-degree possessing criminal tools. Gwynne was also charged with 15 first-degree-misdemeanor counts of receiving stolen property.

> After negotiations with the state, Gwynne elected to enter pleas of guilty to 17 counts of second-degree burglary, 4 counts of third-degree theft, 10 counts of fourth-degree theft, and the 15 misdemeanor counts of receiving stolen property. In exchange for Gwynne's guilty pleas, the state dismissed the remaining 55 counts and recommended that a presentence-investigation report be

completed before Gwynne's sentencing hearing. At sentencing, the court imposed the following terms of imprisonment: three years for each of [the] second-degree-burglary offenses, 12 months for each of the third-degree-theft offenses, 12 months for each of the fourth-degree-theft offenses, and 180 days for each of the misdemeanor receiving-stolen-property offenses. The court made the findings required under R.C. 2929.14(C)(4) for imposing consecutive sentences and ordered the felony sentences to be served consecutively, making Gwynne's aggregate sentence 65 years.

Gwynne appealed to the Fifth District Court of Appeals and argued that (1) the trial court's findings under R.C. 2929.14(C)(4) were erroneous and not supported by the record and (2) her 65-year sentence violated the Eighth Amendment's prohibition against cruel and unusual punishments. The Fifth District reversed the trial court's judgment. *State v. Gwynne*, 5th Dist. Delaware No. 16-CAA-12 0056, 2017-Ohio-7570 ("*Gwynne I*"). In doing so, the court of appeals found that although Gwynne's conduct was serious, the 65-year sentence did not comport with the purposes and principles of felony sentencing as set forth in R.C. 2929.11 and 2929.12 and was plainly excessive and shocking for a nonviolent, first-time offender. *Gwynne I* at ¶ 22-30. Nevertheless, the appellate court still agreed that some consecutive sentences were warranted. *Id.* at ¶ 31. Therefore, it modified Gwynne's felony sentences and imposed an aggregate sentence of 15 years, rendering Gwynne's Eighth Amendment claim moot. *Id*. at ¶ 33-38.

We accepted the state's jurisdictional appeal and reversed the Fifth District's judgment. *See State v. Gwynne*, 158 Ohio St.3d 279, 2019-Ohio-4761, 141 N.E.3d 169 ("*Gwynne II*"). A majority

4

of the justices of this court agreed that R.C. 2953.08(G)(2) does not allow an appellate court to reverse or modify a defendant's consecutive sentences using the principles and purposes of felony sentencing as set forth in R.C. 2929.11(A) and (B) and the seriousness and recidivism factors in R.C. 2929.12. *Gwynne II* at ¶ 13-18 (lead opinion); *id.* at ¶ 31-43 (Kennedy, J., concurring in judgment only). We thus reversed the Fifth District's judgment and remanded the case to the court of appeals for it to consider Gwynne's consecutive-sentence challenge using the standard of review set forth under R.C. 2953.08(G)(2), which permits reversal or modification of consecutive sentences if the reviewing court clearly and convincingly finds that the record does not support the sentencing court's R.C. 2929.14(C)(4) findings. *Gwynne II* at ¶ 20 (lead opinion).

On remand, the Fifth District stated again that while consecutive sentences were appropriate and that the findings made by the trial court before imposing consecutive sentences were appropriate, it still disagreed with the number of consecutive sentences that the trial court imposed. 2021-Ohio-2378, 173 N.E.3d 603, ¶ 19-25 ("*Gwynne III*"). Indeed, it stated that the trial court's imposition of a 65-year sentence was "wholly excessive * * * for a non-violent first time felony offender." *Id.* at ¶ 25. In the end, however, the Fifth District reluctantly upheld the 65-year sentence after concluding that "no authority exists for this court to vacate some, but not all of Gwynne's consecutive sentences." *Id.* The Fifth District also rejected Gwynne's Eighth Amendment claim. *Id.* at ¶ 27-31. Quoting this court's decision in *State v. Hairston*, 118 Ohio St.3d 289, 2008-Ohio-2338, 888 N.E.2d 1073, ¶ 23, the Fifth

District explained that " '[b]ecause the individual sentences imposed by the court are within the range of penalties authorized by the legislature, they are not grossly disproportionate or shocking to a reasonable person or to the community's sense of justice and do not constitute cruel and unusual punishment.' " *Gwynne III* at ¶ 30.

Gwynne appealed, and this court accepted review over the following two propositions of law:

"1. A trial court errs when it sentences a defendant to consecutive terms of imprisonment, when such a sentence is clearly and convincingly not supported by the record.

2. A sentence that shocks the conscience violates the Eighth Amendment's prohibition against cruel and unusual punishment, and is thus contrary to law."

(Footnote omitted.) *Gwynne IV*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 4-9.

{¶ 7} This court dismissed Gwynne's second proposition of law as having been improvidently accepted in *Gwynne IV*, so only the first proposition of law will be addressed here.

**Law and Analysis**

*Standard of review—statutory construction*

{¶ 8} Gwynne's first proposition of law raises a question of statutory interpretation. De novo review applies to questions of statutory interpretation. *Ceccarelli v. Levin*, 127 Ohio St.3d 231, 2010-Ohio-5681, 938 N.E.2d 342, ¶ 8. "The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact." *Slingluff v. Weaver*, 66 Ohio St. 621, 64 N.E. 574 (1902), paragraph two of the syllabus. "When the statutory language is plain

and unambiguous, and conveys a clear and definite meaning, we must rely on what the General Assembly has said," *Jones v. Action Coupling & Equip., Inc.*, 98 Ohio St.3d 330, 2003-Ohio-1099, 784 N.E.2d 1172, ¶ 12, and apply it as written, *Summerville v. Forest Park*, 128 Ohio St.3d 221, 2010-Ohio-6280, 943 N.E.2d 522, ¶ 18.

*Legislative authority to enact sentences*

{¶ 9} The constitutional authority to legislate was conferred solely on the General Assembly, Article II, Section 1, Ohio Constitution, and it is the province of the General Assembly to make policy decisions, *Groch v. Gen. Motors Corp.*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, ¶ 212. It is undisputed that "[j]udicial policy preferences may not be used to override valid legislative enactments." *State v. Smorgala*, 50 Ohio St.3d 222, 223, 553 N.E.2d 672 (1990), *superseded by statute on other grounds as stated in State v. Mayl*, 106 Ohio St.3d 207, 2005-Ohio-4629, 833 N.E.2d 1216, ¶ 54.

{¶ 10} The legislature "is vested with the power to define, classify, and prescribe punishment for offenses committed in Ohio." *State v. Taylor*, 138 Ohio St.3d 194, 2014-Ohio-460, 5 N.E.3d 612, ¶ 12. "Judges have no inherent power to create sentences," and instead "are duty-bound to apply sentencing laws as they are written." *State v. Fischer*, 128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, ¶ 22, *overruled on other grounds by State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248.

*R.C. 2953.08(G)(2) is unambiguous and provides appellate courts with limited authority to review consecutive sentences*

{¶ 11} Appellate review of criminal sentences is governed by R.C. 2953.08. This court has recognized that "[o]rdinarily, appellate courts defer to trial courts' broad discretion in making sentencing decisions," and R.C. 2953.08(G) reflects that deference. *State v. Rahab*, 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 10 (lead opinion); *see also State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-

1002, 59 N.E.3d 1231, ¶ 23 (describing the appellate court's review of whether a sentence is clearly and convincingly contrary to law under R.C. 2953.08(G) as being deferential to the sentencing court).

{¶ 12} R.C. 2953.08(G)(2)(a) provides:

(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. The appellate court's *standard for review is not* whether the sentencing court *abused its discretion*. The appellate court may take any action authorized by this division if it *clearly and convincingly finds* * * *:

(a) That the *record does not support* the sentencing court's findings under division * * * (C)(4) of section 2929.14 * * *.

(Emphasis added.)

{¶ 13} The language of R.C. 2953.08(G)(2) mandates that an appellate court may increase, reduce, or otherwise modify consecutive sentences only if the record does not "clearly and convincingly" support the trial court's R.C. 2929.14(C)(4) consecutive-sentence findings. The clear-and-convincing standard for appellate review in R.C. 2953.08(G)(2) is written in the negative.

{¶ 14} This court has defined "clear and convincing evidence" as "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable

doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 15} Therefore, an appellate court is directed that it must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences. The statutory language does not require that the appellate court have a firm belief or conviction that the record supports the findings. This language is plain and unambiguous and expresses the General Assembly's intent that appellate courts employ a deferential standard to the trial court's consecutive-sentence findings. R.C. 2953.08(G)(2) also ensures that an appellate court does not simply substitute its judgment for that of a trial court.

{¶ 16} The majority in *Gwynne IV*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, ¶ 12, 23, concluded that R.C. 2953.08(G)(2) requires an appellate court to review the record de novo, but that is contrary to the plain language of R.C. 2953.08(G)(2). De novo review requires a court to exercise its independent judgment. *Lincoln Properties, Inc. v. Goldslager*, 18 Ohio St.2d 154, 159, 248 N.E.2d 57 (1969). The legislature knows how to express whether a court should conduct a de novo review. R.C. 2929.05(A), the statute that explains the appellate standard for reviewing a death-penalty sentence, states:

> The court of appeals and the supreme court shall review the judgment in the case and the sentence of death imposed by the court or panel of three judges in the same manner that they review other criminal cases, *except that they shall review and independently weigh all of the facts and other evidence disclosed in the record in the case* and consider the offense and the offender to determine whether the aggravating circumstances the offender was found

guilty of committing outweigh the mitigating factors in the case, and whether the sentence of death is appropriate.

(Emphasis added). Had the General Assembly intended for a court of appeals to conduct a de novo review of the record and the trial court's consecutive-sentence findings, it would have done so. But it did not. De novo review of a trial court's consecutive-sentence findings is simply incongruous with the deference that the legislature stated an appellate court must give those findings in the statutory language of R.C. 2953.08(G)(2). The appellate court may not defer to the trial court's consecutive-sentence findings while at the same time exercising an independent power of review.

*Review of Gwynne's sentence*

{¶ 17} At sentencing, the trial court made the required R.C. 2929.14(C)(4) consecutive-sentence findings:

The felony sentences are imposed consecutively. I find that consecutive sentences are necessary to protect the public from future crime and to punish [Gwynne]. Consecutive sentences are not disproportionate to the seriousness of [Gwynne's] conduct and the danger she poses to the public, and I find at least two of the multiple offenses were committed as part of a course of conduct and the harm caused by two or more of the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of the course of conduct would adequately reflect the seriousness of [Gwynne's] conduct.

{¶ 18} The record in this case does not clearly and convincingly fail to support the trial court's findings; in other words, it does not overwhelmingly

support a contrary result concerning the imposition of consecutive sentences. Gwynne engaged in an approximately eight-year life of crime, stealing countless items of both financial and personal value from some of the most vulnerable members of society—the elderly who were residing in nursing homes and assisted-living facilities. Many of the elderly victims also suffered from medical or cognitive issues. Gwynne's actions deprived the victims of their sense of security and their ability to trust their caregivers. She also deprived the victims and their family members of heirlooms and the ability to continue their shared familial heritage. The trial court's imposition of consecutive sentences was not clearly and convincingly not supported by the record.

{¶ 19} The criticisms of the first dissenting opinion warrant only a brief response. First, this dissent contends that the meaning of R.C. 2929.14(C)(4) is unclear because the terms "consecutive service" and "consecutive sentences" are ambiguous. It asserts that in addition to their so-called "abstract" meaning, these terms can also refer to the aggregate prison term that results from the imposition of consecutive sentences. First dissenting opinion at ¶ 56. The first dissenting opinion fails to prove that this is true.

{¶ 20} A statute is ambiguous when its text supports "two equally persuasive and competing interpretations of the law." (Emphasis added.) *State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 166 Ohio St.3d 64, 2021-Ohio-3156, 182 N.E.3d 1142, ¶ 21. When interpreting a statute, a court does not declare a statute to be ambiguous merely because there are two different ways to define a statutory term. Instead, the court must simply read the language of the statute, as informed by the canons of construction and context, and determine whether one best reading emerges.

{¶ 21} The terms "consecutive service" and "consecutive sentences" each have only one relevant meaning: the running of two or more sentences one right after the other. *See Black's Law Dictionary* 1569 (10th Ed.2014) (defining

"consecutive sentences" to mean "[t]wo or more sentences of jail time to be served in sequence"). Neither of these terms is synonymous with the term "aggregate sentence," which means "[t]he total sentence imposed for multiple convictions * * *," *id*. R.C. 2929.14(C)(4) therefore is not ambiguous, and the first dissent simply reads words into the statute when it suggests that the trial court's consecutive-sentence findings must be made and reviewed in consideration of the aggregate sentence to be imposed. So, even if the first dissent were correct that determining the meaning of "consecutive service" and "consecutive sentences" is a threshold question that must be decided before addressing the arguments actually briefed by the parties, it would not affect the outcome here.

{¶ 22} Second, the first dissent asserts that a de novo standard of review applies to an appellate court's review of a trial court's imposition of consecutive sentences. First dissenting opinion at ¶ 71, citing *Gwynne IV*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 23. However, that view is inconsistent with the plain language of R.C. 2953.08(G)(2). Again, de novo review requires an appellate court to exercise its independent judgment. *See Lincoln Properties*, 18 Ohio St.2d at 159, 248 N.E.2d 57. In contrast, R.C. 2953.08(G)(2)(a) precludes an appellate court from substituting its judgment for that of the trial court, and instead, it allows an appellate court to modify or vacate consecutive sentences if it *clearly and convincingly* finds that the record does not support the sentencing court's consecutive-sentence findings. By imposing this limitation on appellate review of consecutive sentences, the statute denies appellate courts the unfettered power to modify or vacate the imposition of consecutive sentences that is posited by the first dissent.

{¶ 23} Third, the first dissent traces the legislative history of R.C. 2929.14(C)(4) and 2953.08(G)(2) and argues that the General Assembly intended to eliminate deference on appeal following a trial court's imposition of consecutive sentences. However, the legislature limited the discretion of trial courts to impose

consecutive sentences in a specific way: by requiring them to make certain findings before they can impose consecutive sentences. R.C. 2929.14(C)(4). The General Assembly could also have eliminated the deference traditionally owed to a trial court's sentencing decisions. *See Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 23. But it did not.

**{¶ 24}** Lastly, the first dissent is incorrect when it claims that our application of the law to the facts of this case changes the standard of review. R.C. 2953.08(G)(2)(a) is plain and unambiguous and permits an appellate court to modify or vacate consecutive sentences if it clearly and convincingly finds that the record does not support the trial court's consecutive-sentence findings. Our analysis simply applies this standard created by the statute and concludes that the court of appeals could not clearly and convincingly find that the record does not support the trial court's findings. This does not mean that we would impose the same sentence if we sat in the trial court's place. But contrary to the assertion in the first dissent, we may not rely on our own findings of fact (or speculation)—such as a finding that criminal activity tends to reduce with age, that Gwynne's offenses were crimes of opportunity, or that mental-health issues are likely involved—to second-guess the trial court's factual findings in support of consecutive sentences. Even the first dissent recognizes that " 'the appellate court is constrained to considering only the findings in R.C. 2929.14(C)(4) that the trial court has actually made,' " first dissenting opinion at ¶ 71, quoting *Gwynne IV*, __Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 21. Appellate review turns on whether the trial court's findings are clearly and convincingly not supported by the record, and if the evidence supports the trial court's consecutive-sentence findings, the analysis ends there.

## Conclusion

**{¶ 25}** "[T]he only sentence which a trial court may impose is that provided for by statute. A court has no power to substitute a different sentence for that

13

provided for by statute or one that is either greater or lesser than that provided for by law." *Colegrove v. Burns*, 175 Ohio St. 437, 438, 195 N.E.2d 811 (1964). "It is not the role of the courts 'to establish legislative policies or to second-guess the General Assembly's policy choices.' " *Stetter v. R.J. Corman Derailment Servs., L.L.C.*, 125 Ohio St.3d 280, 2010-Ohio-1029, 927 N.E.2d 1092, ¶ 35, quoting *Groch*, 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, at ¶ 212. This court must respect the fact that the constitutional authority to legislate was conferred solely on the General Assembly. Article II, Section 1, Ohio Constitution.

{¶ 26} Upon further reflection, we conclude that the Fifth District properly applied the plain language of R.C. 2953.08(G)(2) and could not clearly and convincingly find that the record did not support the trial court's consecutive-sentence findings. Accordingly, for the reasons set forth above, we grant the motion for reconsideration, vacate our decision in *Gwynne IV*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, and affirm the judgment of the court of appeals.

Motion for reconsideration granted
and judgment affirmed.

DeWine and Deters, JJ., concur.

Fischer, J., concurs in judgment only, with an opinion.

Stewart, J., dissents, with an opinion joined by Trapp and Brunner, JJ.

Brunner, J., dissents, with an opinion joined by Trapp, J.

Mary Jane Trapp, J., of the Eleventh District Court of Appeals, sitting for Donnelly, J.

—————————

**Fischer, J., concurring in judgment only.**

{¶ 27} This case is simple. Appellant Susan Gwynne's consecutive sentences must be affirmed because the appellate court could not find that the record does not support the trial court's consecutive-sentence findings when the appellate court did not have access to the record relied on by the trial court to make

its sentencing findings. Thus, we have no choice but to affirm Gwynne's sentence. Because the lead opinion appropriately affirms the judgment of the lower court, but it does so for a different reason, I concur in judgment only.

**Reconsideration of *State v. Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __ ("*Gwynne IV*")**

{¶ 28} The first dissenting opinion criticizes this court's decision to grant reconsideration of this case after a change in the composition of the court due to an election. This criticism is somewhat bewildering given that many of the members of this court, including the author of the first dissenting opinion, rejected my personal policy position regarding new justices voting on motions for reconsideration in cases in which they did not previously participate, *see State v. Haynes*, 168 Ohio St.3d 1496, 2022-Ohio-4776, 200 N.E.3d 300, ¶ 19 (Fischer, J., dissenting); *see also State v. Braden*, 158 Ohio St.3d 462, 2019-Ohio-4204, 145 N.E.3d 235, ¶ 51 ("*Braden II*") (Fischer, J., dissenting).

{¶ 29} At the beginning of my tenure as a justice of this court, I detailed the unusual position that new justices find themselves in when they are faced with voting on a motion for reconsideration that has been filed in a case in which they did not previously participate. *State v. Gonzales*, 150 Ohio St.3d 276, 2017-Ohio-777, 81 N.E.3d 419, ¶ 24 (Fischer, J., concurring in part and dissenting in part); *see also State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 51 (Fischer, J., concurring in part and dissenting in part). As stated in my separate opinion in *Gonzales*, my general practice upon joining this court was to vote to deny such motions for reconsideration. *Id*. at ¶ 24; *see also Aalim* at ¶ 51. I have been consistent in my view on this issue, and as recently as December 30, 2022, no other justice—including those dissenting here—has adopted my position. *See Haynes* at ¶ 19.

{¶ 30} It is nothing short of an obvious irony when the first dissenting opinion criticizes the decision to reconsider this case. There have been multiple

occasions in which a newly elected justice has voted on a motion to reconsider a decision in which he or she had not participated. *See Haynes* at ¶ 20-22 (Fischer, J., dissenting) (collecting cases). Indeed, the author of the first dissenting opinion was one of two new justices to vote to reconsider and reverse *State v. Braden*, 158 Ohio St.3d 452, 2018-Ohio-5079, 145 N.E.3d 226 ("*Braden I*"), a decision in which she had not participated. *See Braden II*.

**{¶ 31}** "[T]he now-standard practice of this court is to allow all sitting justices to participate in deciding motions for reconsideration, regardless of whether a particular justice participated in the court's original decision in the case." *Haynes*, 168 Ohio St.3d 1496, 2022-Ohio-4776, 200 N.E.3d 300, at ¶ 25 (Fischer, J., dissenting). While it certainly is not my preference that new justices participate in cases that they have never had the opportunity to hear, they have the authority to do so. This practice is further supported by *Jezerinac v. Dioun*, 168 Ohio St.3d 286, 2022-Ohio-509, 198 N.E.3d 792, ¶ 17-22, in which this court held that the judicial authority of the bench follows the seat, not the person.

**{¶ 32}** The first dissenting opinion criticizes a majority of this court for granting reconsideration in this case and addressing only the first proposition of law because it argues that the majority in *Gwynne IV*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, was not wrong for answering a "prerequisite question" that was not briefed or argued by either of the parties, first dissenting opinion, ¶ 52. But that position turns the concepts of judicial restraint, forfeiture, and waiver on their heads.

**{¶ 33}** "In our adversary system, in both civil and criminal cases, in the first instance and on appeal, we follow the principle of party presentation. That is, we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008). We are certainly not limited to the analyses presented by the parties or the analysis of the lower court in resolving

an issue before the court, as this court must apply correct legal principles to resolve legal issues. *See Turner v. CertainTeed Corp*., 155 Ohio St.3d 149, 2018-Ohio-3869, 119 N.E.3d 1260, ¶ 11; *In re D.R.*, ___Ohio St.3d____, 2022-Ohio-4493, ___N.E.3d____, ¶ 37, fn. 2 (Fischer, J., dissenting). But this does not mean that we can address issues that are not before the court simply because they are tangentially related to the proposition of law presented for review. The parties decide what issues to raise for review—it is not the role of this court to question those decisions.

{¶ 34} We should not be addressing issues that were not presented in the proposition of law. *See, e.g.*, *State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248, ¶ 48 (Fischer, J., concurring in judgment only) (this court should not address an issue not presented before the court). When an issue comes to light after initial briefing is completed and it is necessary to address that issue in order to resolve the matter before the court, this court can and usually does order supplemental briefing. *See, e.g.*, *In re Adoption of Y.E.F.*, 157 Ohio St.3d 1409, 2019-Ohio-3749, 131 N.E.3d 87; *Dodd v. Croskey*, 140 Ohio St.3d 1406, 2014-Ohio-3708, 14 N.E.3d 1052. The majority in *Gwynne IV* did not do that—it answered an unbriefed question that neither party asked this court to answer.

{¶ 35} This court has the authority to grant motions for reconsideration to "correct decisions which, upon reflection, are deemed to have been made in error." *State ex rel. Huebner v. W. Jefferson Village Council*, 75 Ohio St.3d 381, 383, 662 N.E.2d 339 (1995). It is only on rare occasions that I vote to grant motions for reconsideration, and I have done so in only a handful of cases in my six years on this court. *See, e.g.*, *Brandt v. Pompa*, 168 Ohio St.3d 1489, 2022-Ohio-4786, 200 N.E.3d 286, ¶ 10 (Fischer, J., dissenting); *State ex rel. Maxcy v. Lucas Cty. Bd. of Elections*, 154 Ohio St.3d 1401, 2018-Ohio-4419, 111 N.E.3d 1; *State v. D.B.*, 150 Ohio St.3d 452, 2017-Ohio-6952, 82 N.E.3d 1162, ¶ 1. But *Gwynne IV* was wrongly decided because it went far beyond what the parties argued or presented

for review, which is one of the reasons cited by appellee, the state, in its motion for reconsideration. *Gwynne IV* was also wrongly decided because this court remanded the cause to the appellate court for an unnecessary review of Gwynne's sentence, *see id.*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 2, 31; as explained more fully below, no matter the standard of review applied by the appellate court, it would have been compelled to affirm because the record is incomplete. Hence, this court had the authority, and good reason, to grant reconsideration in this case.

**Gwynne's sentence must be affirmed given that the record is incomplete**

{¶ 36} This court, against my vote, accepted Gwynne's first proposition of law for review: "A trial court errs when it sentences a defendant to consecutive terms of imprisonment, when such a sentence is clearly and convincingly not supported by the record." *See* 165 Ohio St.3d 1449, 2021-Ohio-3908, 175 N.E.3d 1286. As relevant to this case, for an appellate court to "increase, reduce, or otherwise modify" an offender's sentence under R.C. 2953.08(G)(2), the appellate court must review the record and "clearly and convincingly find" that the "record does not support" the trial court's consecutive-sentence findings made pursuant to R.C. 2929.14(C)(4).

{¶ 37} The lead opinion and the first dissenting opinion disagree about the appropriate standard of review that the appellate court must apply when reviewing consecutive sentences under R.C. 2953.08(G)(2). But this is not a question that we need to resolve in this case, because it is impossible for the appellate court to find under any standard of review that the record does not support the trial court's consecutive-sentence findings in this case, since the Fifth District Court of Appeals did not have access to the presentence-investigation report that the trial court relied on to make its sentencing findings.

{¶ 38} Here, the trial court reviewed and utilized Gwynne's presentence-investigation report to determine the appropriate sentence. *See State v. Gwynne*, 5th Dist. Delaware No. 16 CAA 12 0056, 2017-Ohio-7570, ¶ 11 ("*Gwynne I*").

Thus, the presentence-investigation report was part of the trial court's record and was relevant to the sentencing determination. However, the presentence-investigation report never made it into the appellate record and therefore was never reviewed by the court of appeals. *Id.* at ¶ 27 (the presentence-investigation report was not included for appellate review). We also do not have access to the presentence-investigation report. And the parties have never moved to supplement the record to include the presentence-investigation report. So, neither this court nor the court of appeals could say on this record that "the record does not support" the trial court's R.C. 2929.14(C)(4) findings, *see* R.C. 2953.08(G)(2)(a), when a portion of the record that the trial court used to make its sentencing findings was not provided for review, *see State v. Barnes*, __Ohio St.3d___, 2022-Ohio-4486,___N.E.3d.____, ¶ 54-55 (Fischer, J., dissenting). The lack of Gwynne's presentence-investigation report is fatal to this appeal, as its absence effectively precludes this court from properly reviewing the trial court's consecutive-sentence findings.

**{¶ 39}** The first dissenting opinion is unfairly critical of the conclusion that this matter should be disposed of on the basis of an incomplete record. The first dissenting opinion emphasizes that it does not appear that the appellate court was concerned that this piece of the record was missing. First dissenting opinion at ¶ 54, fn. 2. But that is not the standard, nor should it be. The court of appeals was *required* to consider the presentence-investigation report pursuant to R.C. 2953.08(F)(1). It could not do so, however, because the presentence-investigation report was never transmitted to it, *see Gwynne I* at ¶ 27.

**{¶ 40}** While the first dissenting opinion is right that the appellate court *could* have requested this missing piece of the record, it was not required to do so. It was Gwynne's duty to ensure that the complete record was filed with the reviewing courts. *See Rose Chevrolet, Inc. v. Adams*, 36 Ohio St.3d 17, 19, 520 N.E.2d 564 (1988); App.R. 10(A); S.Ct.Prac.R. 15.01(A). "Any lack of diligence

on the part of an appellant to secure a portion of the record necessary to [her] appeal should inure to appellant's disadvantage." *Rose Chevrolet* at 19; *see Natl. City Bank v. Beyer*, 89 Ohio St.3d 152, 160, 729 N.E.2d 711 (2000) (appellate courts must presume the regularity of the proceedings when the document at issue is not included in the record).

{¶ 41} And this is not a new or unraised argument, but rather, it is an issue that was first identified by the court of appeals more than six years ago in *Gwynne I*. The failure to include the presentence-investigation report is an error that Gwynne allowed to persist throughout the litigation in *Gwynne II*, *Gwynne III*, and *Gwynne IV*. And just because this court did not catch this fatal error in *Gwynne II* or *Gwynne IV* does not mean that we should ignore it now, especially when considering the report is *necessary* to review the validity of Gwynne's sentence. *See* R.C. 2953.08(F)(1).

{¶ 42} In prior cases, we have granted motions to supplement the record with a presentence-investigation report. *See, e.g.*, *State v. Kidd*, 163 Ohio St.3d 1432, 2021-Ohio-1789, 168 N.E.3d 522. But the first dissenting opinion has not pointed to a single case in which we have sua sponte asked the lower courts or the appellant to supplement the record with evidence that was missing from it, as it is *the appellant's* burden to ensure that we have the necessary documents on appeal, *Rose Chevrolet* at 19.

{¶ 43} It is not this court's job to make arguments for the parties, as is done by the first dissenting opinion, or to fix fatal mistakes in the record that were brought to the parties' attention yet not corrected. Just because the first dissenting opinion wants to resolve issues with consecutive sentencing in this case does not mean that we should. Therefore, on this record, we must affirm the judgment of the court of appeals upholding Gwynne's sentence.

**We need not issue an advisory opinion in this case**

{¶ 44} As for the issues discussed by the lead opinion and two dissenting opinions, I reserve judgment and will decide those issues when they are presented in a case in which the parties have preserved and argued them on appeal. There is no doubt that there are issues with appellate review of consecutive sentences, but we need to show restraint and resolve those matters when they have been properly raised and argued by the parties. Supplemental briefing, as requested by the state in its motion for reconsideration, resolves nothing in this case because Gwynne did not raise the issues resolved by the lead opinion and dissenting opinions. Gwynne may have claims that she can raise in postconviction proceedings, but we should not simply ignore the fact that she did not raise those arguments properly here so that we can address what she perceives as error in her sentence.

{¶ 45} There is a case currently pending in this court, *State v. Glover*, Supreme Court case No. 2023-0654, that presents an opportunity for this court to address whether an aggregate prison term is a factor in imposing or reviewing consecutive sentences. *See State v. Glover*, 170 Ohio St.3d 1507, 2023-Ohio-2664, 213 N.E.3d 716. That case seems like a more appropriate vehicle for this court to decide issues related to consecutive sentencing.

**Conclusion**

{¶ 46} For the foregoing reasons, I concur only in the judgment of the lead opinion affirming the judgment of the court of appeals.

————————————

**STEWART, J., dissenting.**

{¶ 47} This court issued a majority opinion in this case on December 23, 2022. That decision provided long overdue clarification on the law concerning appellate review of consecutive sentences and remanded the matter to the Fifth District Court of Appeals for application of the clarified law. On January 7, 2023, the judicial makeup of this court changed following the governor's appointment

and the swearing in of a new justice to a vacancy on the court. Just prior to this, on January 3, 2023, the state had filed a motion asking the court to reconsider our December 23 decision, and four justices of this court have now chosen to grant the state's request. In doing so, however, these justices have not issued an opinion that comes to an agreement on the law. While the three justices in the lead opinion granting reconsideration explicitly disagree with this court's December 23 interpretation of the law on consecutive-sentence review and would affirm the Fifth District's judgment on that basis, the justice concurring in judgment only does so on strictly procedural grounds. This means that although four justices of this court believe that this case is deserving of the extraordinary measure of reconsideration,[1] they leave the law on consecutive sentences unclear, just as it had been for over 25 years until this court issued its December 23, 2022 decision clarifying the law. This also means that appellant Susan Gwynne's 65-year sentence—which was calculated by running consecutively individual one- and three-year terms for nonviolent theft offenses—remains in place without any further consideration, despite the Fifth District's twice acknowledging that Gwynne's sentence "shocks the conscience" and "is disproportionate to her conduct," *see* 2021-Ohio-2378, 173 N.E.3d 603, ¶ 30; *State v. Gwynne*, 5th Dist. Delaware No. 16 CAA 12 0056, 2017-Ohio-7570, ¶ 30.

{¶ 48} It is perplexing and disconcerting that these justices would grant reconsideration in a case that simply remanded the matter to the court of appeals in order for it to review the sentence under the clarified standard and yet produce no majority opinion on the law. Worse yet, rather than bringing clarity to the issues presented in this case, the lead opinion will keep the law on consecutive-sentencing review so muddled that it will be virtually impossible for any defendant to ever

---

1. The standards for reconsideration are purposefully "onerous." *State v. Braden*, 158 Ohio St.3d 462, 2019-Ohio-4204, 145 N.E.3d 235, ¶ 33-34 (Kennedy, J., dissenting).

successfully challenge an aggregate sentence imposed as a result of running multiple individual sentences consecutively. Because neither the plain language nor the history of the relevant statutes supports the lead opinion's interpretation of the law, I dissent from the court's decision to grant reconsideration, and I also dissent from the court's decision to deny the state's request for additional briefing as part of its motion for reconsideration.

**The central issue before the court cannot be answered without first addressing what is required by R.C. 2929.14(C)(4), and a dictionary alone cannot provide the answer to that question**

{¶ 49} The question raised by the first proposition of law—whether, pursuant to the standard set forth in R.C. 2953.08(G)(2), Gwynne's aggregate 65-year prison sentence should be reversed or modified—cannot be answered without first answering the more fundamental, prerequisite question of what exactly is meant in R.C. 2929.14(C)(4) by the terms "consecutive service" and "consecutive sentences" in relation to the necessity and proportionality findings the statute requires that the trial court make. This is because the scope of appellate review under R.C. 2953.08(G)(2) broadens or narrows depending on how this question is resolved.

{¶ 50} If the abstract concept of consecutive service or consecutive sentences applies, then on appeal, the question an appellate court must ask itself, pursuant to the standard provided in R.C. 2953.08(G)(2), is whether it clearly and convincingly finds that the record does not support the trial court's findings under R.C. 2929.14(C)(4) that consecutive service of more than one individual sentence "is necessary to protect the public from future crime or to punish the offender" and that the imposition of more than one individual sentence is "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Should the abstract concept apply, the scope of appellate review under R.C. 2953.08(G)(2) would be limited to whether the record clearly and

convincingly does not support the imposition of consecutive sentences as a general matter because only concurrent sentences are warranted.

{¶ 51} On the other hand, if in making R.C. 2929.14(C)(4)'s necessity and proportionality findings, a trial court is required to consider each individual prison term that it chooses to run consecutively to another and, by extension, the aggregate prison term that results from that determination, then the question is much different. Using this case as an example, the question an appellate court must ask itself is whether it clearly and convincingly finds that the record does not support the trial court's findings that consecutive service of the three-year prison terms on each burglary count combined with consecutive service of the 12-month prison terms on each theft count "is necessary to protect the public from future crime or to punish the offender" and that these consecutive sentences "are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." R.C. 2929.14(C)(4). Under this more definite understanding of "consecutive service" and "consecutive sentence," which reflects the consecutive terms that the court actually imposed, the scope of appellate review broadens to encompass review of the necessity and proportionality of each individually stacked consecutive sentence. The inquiry is no longer whether consecutive sentences may be imposed at all but, rather, whether each individual consecutive sentence is warranted considering R.C. 2953.08(G)(2)'s appellate-review standard.

{¶ 52} As explained in the original majority opinion, the Fifth District Court of Appeals reluctantly upheld Gwynne's 65-year sentence on remand after concluding that " 'no authority exists for this court to vacate some, but not all of Gwynne's consecutive sentences.' " *State v. Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, ¶ 8, quoting 2021-Ohio-2378, 173 N.E.3d 603, ¶ 25. The Fifth District reached this result despite explicitly finding—on two occasions—that the length of Gwynne's sentence is so disproportionate to her conduct that it shocks the conscience. 2021-Ohio-2378, 173 N.E.3d 603, at ¶ 30; *Gwynne*, 5th Dist.

Delaware No. 16 CAA 12 0056, 2017-Ohio-7570, at ¶ 30. The lead opinion on reconsideration says that here, the appellate court "*properly* applied [R.C. 2953.08(G)(2)] and could not clearly and convincingly find that the record did not support the trial court's findings for consecutive sentences." (Emphasis added.) Lead opinion, ¶ 5. But without actually addressing the issue of what R.C. 2929.14(C)(4) means in the context of a trial court's decision to order consecutive service of multiple sentences, the lead opinion cannot reach the conclusion that the appellate court acted "properly." Indeed, just as an appellate court cannot determine whether a conviction for a given offense is against the manifest weight of the evidence without first knowing the elements of the offense, an appellate court cannot determine whether a given record clearly and convincingly does not support a trial court's findings without first understanding what those findings require and concern. This is the reason the December 23, 2022 majority opinion found it necessary to address the prerequisite question of what "consecutive service" and "consecutive sentences" mean in the context of R.C. 2929.14(C)(4).

{¶ 53} The lead opinion on reconsideration notes the fact that the original majority answered this question without briefing from the parties as a reason for granting reconsideration in this matter. Lead opinion at ¶ 4. But the mere fact that the original majority addressed an unbriefed question is by no means cause for reconsideration of that opinion. Indeed, the decision by the original majority to address the underlying questions to Gwynne's first proposition of law is supported by this court's precedent. In the recent past, when this court has encountered a predicate question that, as a practical matter, should be answered before the question presented by the proposition of law is considered, we have addressed the predicate question. *See State v. Harper*, 160 Ohio St.3d 480, 2020-Ohio-2913, 159 N.E.3d 248 (Kennedy, J., majority opinion) (overruling our void-sentence case law even though the parties did not raise a facial challenge to the void-sentence doctrine on appeal). Furthermore, the author of the lead opinion has seen fit to answer

unbriefed questions under far more concerning circumstances when the unbriefed questions involved issues of constitutional magnitude. *See State ex rel. Maxcy v. Saferin*, 155 Ohio St.3d 496, 2018-Ohio-4035, 122 N.E.3d 1165, ¶ 14 (Kennedy, J., majority opinion, joined by O'Donnell, French, and DeWine, JJ.).

{¶ 54} If the justices granting reconsideration today were truly concerned about the original majority opinion having answered an unbriefed question, one wonders why these justices have chosen not to order additional briefing before issuing their decisions on reconsideration in this matter. Indeed, in its motion for reconsideration the state directly asked the court for leave to brief the prerequisite question, but the four justices who have decided to grant reconsideration, including the justice authoring the opinion concurring in judgment only,[2] refused to grant the

---

2. The author of the opinion concurring in judgment only states "that it is only on rare occasions that [he] votes[s] to grant motions for reconsideration, and [he has] done so in only a handful of cases." Opinion concurring in judgment only, ¶ 35. While this may be true, it raises the curious question of why this case should represent one of those rare occasions worthy of the author's reconsideration. The opinion concurring in judgment only attempts to explain the author's decision to vote in favor of reconsideration as one that is necessitated by two different concerns: (1) that the December 23, 2022 majority opinion answered unbriefed questions, *id.* at ¶ 34, and (2) that regardless of the positions of the lead opinion and dissenting opinions in this matter, the appellate court had no choice but to affirm the trial court's order of consecutive sentences because Gwynne's praecipe did not request that the presentence-investigation report (PSI) be transmitted as part of the record on appeal, *id.* at ¶ 40. Without the PSI, according to the opinion concurring in judgment only, it was impossible for the appellate court to reach the substantive question of whether it clearly and convincingly found that the record did not support the consecutive-sentence findings. *Id.* at ¶ 37-38. There is reason to doubt both of these concerns.

To begin, had the author of the opinion concurring in judgment only voted to allow the additional briefing the state requested as part of its request for reconsideration, there would be a majority vote to issue an order granting additional briefing. Problem solved.

Second, that the PSI was not included in the record on appeal is not something that the appellate court appeared to be concerned about, nor did it view it as something that inhibited its ability to review Gwynne's sentences under R.C. 2953.08(G)(2). Indeed, in the decision presently on review, the appellate court never mentioned the lack of a PSI as a factor limiting its ability to review the consecutive-sentence findings made by the trial court. *See* 2021-Ohio-2378, 173 N.E.3d 603. And in an earlier decision in the same matter, the appellate court had only this to say about the missing PSI:

> [A]lthough the PSI has not been included for our review, the trial court at the sentencing hearing indicated appellant's prior record contained only

state's request for additional briefing on the prerequisite question, as part of its motion for reconsideration. Notably, although the justices joining this dissent

---

> misdemeanors and those were "very minor ones," and "[appellant] had no record of juvenile delinquency activity." * * * Additionally, the court indicated that "the computerized risk assessment tool," (presumably in the PSI) "put the Defendant in the low to moderate risk category for likelihood of reoffending."

(Brackets sic.) *Gwynne*, 5th Dist. Delaware No. 16 CAA 12 0056, 2017-Ohio-7570, at ¶ 27. In other words, the appellate court appears to have been able to determine enough about the PSI from the remaining record evidence to draw conclusions about what the PSI contains and how it does, or does not, support the sentences imposed. Perhaps the opinion concurring in judgment only is correct that it would be error for an appellate court to conduct its review under R.C. 2953.08(G)(2) without a copy of the PSI in the record, and perhaps the decision of the court of appeals upholding Gwynne's sentence should have been affirmed on that basis alone. However, the state has not raised this argument on appeal to this court, and the issue has not been briefed. Indeed, the author of the opinion concurring in judgment only never mentioned the missing PSI as an alternative reason for affirming the appellate court's judgment when he joined the opinion dissenting from this court's original majority opinion, nor did this justice advocate for additional briefing on the matter prior to the release of that decision or even now on reconsideration—assuming it is a prerequisite question that must be resolved. If judicial restraint and adherence to the doctrines of forfeiture and waiver are in fact the guiding principles on which the author of the opinion concurring in judgment only feels compelled to grant reconsideration in this matter, *see* opinion concurring in judgment only at ¶ 32-34, it is bewildering that this justice would choose to grant reconsideration based on his analysis of an unbriefed question of law, an approach that is inconsistent with his earlier position in this very case.

Such inconsistencies aside, the missing PSI is, for all intents and purposes, a nonissue at the moment. That is because this court's December 23, 2022 majority opinion in this matter remanded the case to the court of appeals for further consideration. App.R. 9(E) gives courts of appeals the ability to grant a motion to supplement the record on appeal or to sua sponte order such supplementation, at any time, should a necessary document be missing. *See State v. Brandon*, 2nd Dist. Clark Nos. 2014-CA-143, 2014-CA-144, 2014-CA-145, 2016-Ohio-227, ¶ 7, fn. 1 (explaining that "[a]lthough the PSI report was not in the record, we sua sponte ordered that the record be supplemented with the report and we have reviewed it"). Therefore, on remand, the court of appeals has the ability to obtain and review Gwynne's PSI. Again, problem solved.

Lastly, and perhaps most importantly, the author of the opinion concurring in judgment only says that he "reserve[s] judgment" to decide matters raised in the lead and dissenting opinions. Opinion concurring in judgment only at ¶ 44. But if the authoring justice were reserving judgment, and indeed exercising judicial restraint, a vote to reconsider this court's December 23, 2022 majority opinion in this case would not be appropriate. Instead, this outcome-driven opinion simply serves to perpetuate confusion in the law and, ultimately, ensure that Susan Gwynne serves the remainder of her life-long sentence without further appellate review. The author of the opinion concurring in judgment only could indeed reserve judgment on the questions of law addressed by the lead and dissenting opinions here, while also exercising judicial restraint, by denying reconsideration in this matter and waiting for *State v. Glover*, Supreme Court case No. 2023-0654, to answer the relevant questions before the court, *see* 170 Ohio St.3d 1507, 2023-Ohio-2664, 213 N.E.3d 716.

disagree with the decision to grant reconsideration in this matter, we nevertheless voted to grant the state's request for additional briefing should this case be reconsidered. However, because the request for additional briefing does not garner a four-justice majority, that request has been denied. Despite not having this additional briefing and despite the fact that one of the purported bases for granting reconsideration of the December 23, 2022 majority opinion was that an analysis was conducted without allowing the parties to submit additional briefing, the three justices in the lead opinion nevertheless choose to answer the prerequisite question anyway. Lead opinion at ¶ 19-21. In doing so, the three justices in the lead opinion have determined that the terms "consecutive service" and "consecutive sentences" are not ambiguous and that they "have only one relevant meaning: the running of two or more sentences one right after the other." *Id.* In other words, it is the opinion of those three justices that when a trial court is considering whether to impose sentences on individual counts consecutively—and thereby overcome the general rule established by the legislature that multiple sentences are to be served concurrently—the trial court need not consider the effect of each consecutive sentence that will be imposed when it comes to determining whether all of the consecutive sentences are necessary to protect the public or punish the offender and are not disproportionate to the seriousness of the offender's conduct and the danger the offender poses to the public. *See* R.C. 2929.14(C)(4). That conclusion is astonishing.

{¶ 55} As the lead opinion explains, "[a] statute is ambiguous when its text supports 'two equally persuasive and competing interpretations of the law.' " Lead opinion at ¶ 20, quoting *State ex rel. Ferrara v. Trumbull Cty. Bd. of Elections*, 166 Ohio St.3d 64, 2021-Ohio-3156, 182 N.E.3d 1142, ¶ 21. And, as the lead opinion further points out, when determining whether two equally persuasive and competing interpretations of the law exist, the language of the law shall be informed by its context and the canons of construction. *Id.* The December 23 majority

opinion did not deviate from these principles when interpreting R.C. 2929.14(C)(4), but the lead opinion's analysis does.

{¶ 56} As meticulously explained in the December 23 majority opinion, the terms "consecutive service" and "consecutive sentences" are not explicitly defined by R.C. 2929.14(C)(4) and could mean either (1) "the abstract conceptualization of the terms, as in the service of more than one individual sentence," or (2) "the consecutive sentence that the trial court actually imposes—that is, the individual prison term on each count that the trial court decides to impose consecutively and the aggregate prison term that results" from the stacking of each of those sentences. *Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 13. The December 23 majority opinion then went on to examine these terms within the context of R.C. 2929.14(C)(4) and determined that the best reading of these terms—and the only one that actually makes sense given the surrounding language in the statute—was that "consecutive service" and "consecutive sentences" do not reflect their abstract meaning but instead refer to the sentence to actually be imposed. *Id*. at ¶ 17. Specifically, the majority opinion stated:

> When the consecutive-sentencing-findings language in R.C. 2929.14(C)(4) is looked at as a whole, no other option exists but for this court to find that R.C. 2929.14(C)(4) requires the trial court to consider each sentence on individual counts that it intends to impose consecutively on the defendant and the aggregate prison term that will result. For a trial court to find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" and that consecutive service is necessary to protect the public or to punish the offender, R.C. 2929.14(C)(4), the trial court must know the number of consecutive sentences it is going to be imposing and the aggregate

term that will result before it can say that consecutive sentences are necessary and not disproportionate to the conduct or danger the person poses to the public.

Similarly, we interpret R.C. 2929.14(C)(4)(c) to require a trial court to consider the number of consecutive sentences that it will impose on a defendant along with the aggregate prison term. Before a trial court makes the finding that the defendant's "history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime," it must determine whether the defendant's criminal history demonstrates the need for a lengthy prison term to adequately protect the public from the threat of future crimes by the defendant. In other words, within the context of R.C. 2929.14(C)(4), whether consecutive sentences are *necessary* to protect the public is completely dependent on whether the defendant's criminal history demonstrates the need for the defendant to be incapacitated by a lengthy term of incarceration. A trial court cannot make this necessity finding without considering the overall prison term that it will be imposing.

Additionally, R.C. 2929.14(C)(9) states: "When consecutive prison terms are imposed pursuant to * * * [R.C. 2929.14(C)(4)] * * *, the term to be served is the aggregate of all of the terms so imposed." This indicates that the phrases "consecutive service" and "consecutive sentences" in R.C. 2929.14(C)(4) mean the aggregate of all consecutive sentences to be imposed. These phrases do not mean consecutive sentences in the abstract.

(Emphasis and ellipses sic; footnote omitted.) *Id.* at ¶ 14-16. The December 23 majority opinion's contextual analysis was undeniably thorough and eminently

logical. Furthermore, the analysis applied sound and tested principles of statutory interpretation—including the rule of lenity found in R.C. 2901.04(A), which states that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." *Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 16-17. It was only after conducting this analysis that the December 23 majority opinion concluded that R.C. 2929.14(C)(4) requires that when a trial court makes its necessity and proportionality findings, it must consider the individual sentences on each count that it intends to have the defendant serve consecutively and the aggregate prison term that will result. *Id*. at ¶ 14. No other rational conclusion exists.

{¶ 57} The lead opinion disagrees with the December 23 majority opinion's determination that the terms "consecutive service" and "consecutive sentences" mean the actual consecutive sentences imposed by the trial court.[3] Specifically, it is the position of the justices in the lead opinion that these terms are not ambiguous to begin with, because their chosen dictionary definition of "consecutive sentences" would seem to assign an abstract meaning to that term. *See* lead opinion at ¶ 21. But this attribution is not helpful at all. A legal dictionary will, as a matter of course, provide the broadest applicable definition of a legal term, but—as the lead opinion concedes, lead opinion at ¶ 20—ultimately, it will always be the context in which that term appears that gives the term its significance and determines its meaning. Because a dictionary cannot provide all possible definitions of a term for

---

3. The lead opinion disingenuously attempts to reframe what the December 23, 2022 majority opinion said in this case. The December 23 opinion never concluded, as the lead opinion suggests, that the terms "consecutive service" and "consecutive sentences" are synonymous with the term "aggregate sentence." *See* lead opinion at ¶ 21. Instead, the majority opinion concluded that when these terms are used in R.C. 2929.14(C)(4), they refer to the consecutive sentences that the court actually imposes—that is, the specific sentences that the court chooses to stack and their cumulative effect in terms of the aggregate total sentence. *See Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 12-17.

every conceivable context in which it may appear, it is an unsatisfactory tool for legal interpretation when used alone.

**{¶ 58}** The Seventh Circuit Court of Appeals explained the dangers of relying exclusively on dictionary definitions in *United States v. Costello*, 666 F.3d 1040, 1043-1044 (7th Cir.2012), in which Judge Richard Posner explained:

> [D]ictionaries must be used as sources of statutory meaning only with great caution. "Of course it is true that the words used, even in their literal sense, are the primary, and ordinarily the most reliable, source of interpreting the meaning of any writing: be it a statute, a contract, or anything else. But it is one of the surest indexes of a mature and developed jurisprudence not to make a fortress out of the dictionary; but to remember that statutes always have some purpose or object to accomplish, whose sympathetic and imaginative discovery is the surest guide to their meaning." *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir.1945) (L. Hand, J.)." [T]he choice among meanings [of words in statutes] must have a footing more solid than a dictionary—which is a museum of words, an historical catalog rather than a means to decode the work of legislatures." Frank H. Easterbrook, "Text, History, and Structure in Statutory Interpretation," 17 Harv. J.L. & Public Policy 61, 67 (1994); *see also* A. Raymond Randolph, "Dictionaries, Plain Meaning, and Context in Statutory Interpretation," 17 Harv. J.L. & Public Policy 71, 72 (1994). * * *
>
> Dictionary definitions are acontextual, whereas the meaning of sentences depends critically on context, including all sorts of background understandings. *In re Erickson*, 815 F.2d 1090, 1092 (7th Cir.1987).

(Brackets added in *Costello*; ellipsis added).

{¶ 59} Although the lead opinion acknowledges that context and canons of construction inform the meaning of terms within a statute, lead opinion at ¶ 20, the lead opinion offers no contextual analysis of the terms, whatsoever. Instead, it simply asserts that these terms are not ambiguous, as if simply saying it makes it so. The December 23 dissenting opinion did the same thing. *Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, ¶ 63 (Kennedy, J., dissenting). Notably, without providing any basis in the law or even basic logic, that dissenting opinion declared that the terms "consecutive service" and "consecutive sentences" do nothing more than "relate to the same type of prison term the court can impose: consecutive—one after the other," before further declaring that "[w]hether this language is read in isolation or in conjunction with the statutory scheme, it is not ambiguous." *Id*. at ¶ 64.

{¶ 60} To top things off, the December 23 dissenting opinion made the unabashed declaration that R.C. 2929.14(C)(4)'s requirement that a court make certain findings before imposing consecutive sentences essentially has no real meaning, serves no real purpose, and requires nothing more from a trial court than the rote recitation of the required statutory findings. Specifically, the dissenting opinion stated:

> The only reasonable interpretation of R.C. 2929.12(C)(4) is that when a trial court is imposing multiple prison terms, it may order a defendant to serve some or all of those prison terms consecutively if it makes the statutory findings established by the legislature. *See State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 26. According to the statute, that is all the trial court must do.

*Id*. at ¶ 67 (Kennedy, J., dissenting). That the lead opinion and the December 23 dissenting opinion demonstrate such a pattern of unsound logic, devoid of any analysis, is disturbing, to say the least. Not only does this poor reasoning reflect badly on this court's ability to responsibly carry out its function as the highest reviewing court in the state, but it eschews a fair and just review of the law.

## Appellate review of consecutive sentences under R.C. 2953.08(G)(2) does not require broad deference to the trial court's R.C. 2929.14(C)(4) findings

{¶ 61} With almost no supporting legal analysis, the lead opinion holds that R.C. 2953.08(G)(2) requires appellate courts to give broad deference to trial-court consecutive-sentence findings. Lead opinion at ¶ 15. However, this conclusion could not be further from what the General Assembly intended. A review of the legislative history of R.C. 2929.14(C)(4) and 2953.08(G)(2), as well as our case law concerning the two statutes, provides a clear understanding as to why.

{¶ 62} For more than 100 years, the common law—not state statute—controlled the imposition of consecutive sentences in Ohio. *See State v. Lett*, 161 Ohio App.3d 274, 2005-Ohio-2665, 829 N.E.2d 1281, ¶ 34 (8th Dist.) ("As early as 1868, the Supreme Court of Ohio recognized that in the absence of a statute on point, courts could order that sentences be served consecutively"). During this time, Ohio law presumed that when a court sentenced an offender to multiple terms of imprisonment, those terms would be served consecutively, not concurrently. *Id*. at ¶ 35. If a trial court wished to impose concurrent sentences, it had to say so explicitly in its sentencing entry; otherwise the common-law presumption applied. *See Stewart v. Maxwell*, 174 Ohio St. 180, 181, 187 N.E.2d 888 (1963) ("a positive act is required on the part of the sentencing court to cause sentences to run concurrently; and, in the absence of such action, if the entry is silent as to how sentences shall run, it is presumed such sentences will run consecutively"). This all changed, however, when in 1974, the General Assembly ended the common-

law presumption in favor of consecutive sentences by enacting R.C. 2929.41. *See Lett* at ¶ 35; Am.Sub.H.B. No. 511, 134 Ohio Laws, Part II, 1866, 1985-1986. Contrary to the common-law presumption, the newly enacted law directed that multiple prison terms would be served concurrently, not consecutively, unless the trial court specified otherwise or another statutory exception applied. Specifically, at the time R.C. 2929.41 was enacted, it stated:

> (A) Except as provided in division (B) of this section, a sentence of imprisonment shall be served concurrently with any other sentence of imprisonment. * * *
>
> (B) A sentence of imprisonment shall be served consecutively to any other sentence of imprisonment, in the following cases:
>
> (1) When the trial court specifies that it is to be served consecutively.
>
> * * *

Am.Sub.H.B. No. 511, 134 Ohio Laws, Part II, at 1985-1986. While the 1974 enactment of R.C. 2929.41 reversed the presumption in favor of consecutive service of multiple prison terms, the statute did nothing to guide a trial court's determination or limit the court's discretion to impose consecutive sentences other than to require that the court do so explicitly. Additionally, the statute did not provide for any meaningful appellate review of consecutive sentences. Indeed, so long as a trial court complied with R.C. 2929.41(B) by specifying that the sentences were to be served consecutively, the order imposing consecutive sentences was effectively irreversible. *See, e.g.*, *State v. Johnson*, 40 Ohio St.3d 130, 133-134, 532 N.E.2d 1295 (1988) ("the decision of whether the criminal defendant is to serve the sentences for all his crimes consecutively or concurrently is a matter of

sentencing discretion, the exercise of which is committed to the trial court"); *State v. Shryock*, 1st Dist. Hamilton No. C-961111, 1997 WL 1008672, *2 (Aug. 1, 1997) ("[prior to S.B. 2,] sentencing decisions were generally subjected to an abuse-of-discretion standard, and appellate courts rarely disturbed a sentence imposed within statutory limits"). That all changed in August 1995, when Am.Sub.S.B. No. 2 ("S.B. 2") was signed into law. *See* S.B. 2, 146 Ohio Laws, Part IV, 7136.

{¶ 63} S.B. 2 reflected the General Assembly's "first comprehensive revision of Ohio's criminal code since 1974," when R.C. 2929.41 was originally enacted. Griffin & Katz, *Ohio Felony Sentencing Law*, Section 1:1, at 1 (2008). One of the most notable aspects of S.B. 2 was its overhaul of the state's criminal-sentencing system. *See State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 34, *abrogated in part by Oregon v. Ice*, 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517 (2009); *Woods v. Telb*, 89 Ohio St.3d 504, 507-508, 733 N.E.2d 1103 (2000). Indeed, R.C. 2929.14(C)(4)[4] and 2953.08(G)(2) originate from S.B. 2's sentencing reforms. *See* S.B. 2, 146 Ohio Laws, Part IV, 7469, 7564-7565. In the few years following their enactment, this court broadly described the effect of these two statutory reforms as follows:

> The law now provides precise guidance for criminal sentencing within clearly defined constraints. Painter, Appellate Review Under the New Felony Sentencing Guidelines: Where Do We Stand? (1999), 47 Cleve.St.L.Rev. 533, 537-538. Pursuant to R.C. 2929.11 through 2929.19, *the trial court must follow an*

---

4. When S.B. 2 first took effect, the consecutive-sentencing-findings provision was in division (E)(3) of R.C. 2929.14. *See* S.B. 2, 146 Ohio Laws, Part IV, at 7469; *see also* Am.Sub.S.B. No. 269, 146 Ohio Laws, Part IV, 10752, 10938. As a result of later legislative enactments, the consecutive-sentence-findings provision is now in division (C)(4) of R.C. 2929.14. For ease and clarity of discussion, this opinion refers to R.C. 2929.14(C)(4) for the findings provision, with the understanding that the provision used to be contained in a different division of the statute.

*articulated process when determining a sentence.* The individual provisions of the sentencing scheme may not be read alone. Painter, supra, 47 Cleve.St.L.Rev. at 538. *Additionally, the law accords meaningful review of these sentencing decisions by the appellate courts. "Meaningful review" means that an appellate court hearing an appeal of a felony sentence may modify or vacate the sentence and remand the matter to the trial court for resentencing if the court clearly and convincingly finds that the record does not support the sentence or that the sentence is otherwise contrary to law.* R.C. 2953.08; Griffin & Katz, Ohio Felony Sentencing Law, supra, 791-796, Sections 9.19-9.20.

(Emphasis added.) *State v. Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, ¶ 10, *abrogated on other grounds by Foster* at ¶ 56-61, 65-67.

**{¶ 64}** The General Assembly also made amendments to R.C. 2929.41 as part of S.B. 2's sentencing-law overhaul. Relevant to the present appeal, the legislature modified the language in R.C. 2929.41(B) that permitted a trial court to overcome R.C. 2929.41(A)'s presumption of concurrent sentences for felony offenses by merely specifying its intent to impose consecutive terms in the sentencing entry.[5] S.B. 2, 146 Ohio Laws, Part IV, at 7502-7503. After the S.B. 2

---

5. Immediately prior to S.B. 2's amendments, R.C. 2929.41(B) stated, "[a] *sentence of imprisonment* shall be served consecutively to any other sentence of imprisonment, in the following cases: (1) when the trial court specifies that it is to be served consecutively[.]" (Emphasis added.) Former R.C. 2929.41(B), Am.Sub.H.B. No. 571, 45 Ohio Laws, Part IV, 6342, 6396. As it existed prior to the S.B. 2 amendments, the discretion given by R.C. 2929.41(B) to trial-court judges to impose consecutives sentences by simply expressing an intent to do so applied broadly to both felony and misdemeanor sentences, because the statute did not distinguish between the two and instead used the broad phrase "a sentence of imprisonment." After the S.B. 2 amendments, however, R.C. 2929.41(B) stated: "(1) A sentence of imprisonment *for a misdemeanor* shall be served consecutively to any other sentence of imprisonment when the trial court specifies that it is to be served consecutively * * *." (Emphasis added.) S.B. 2, 146 Ohio Laws, Part IV, at 7502. The

amendment, it was clear that a trial court no longer had the ability to impose consecutive sentences for felony offenses by simply declaring its intent to do so. In turn, and also as part of S.B. 2, the General Assembly also amended R.C. 2929.41(A) to reflect its adoption of the consecutive-sentence findings in R.C. 2929.14(C), which, for the first time, significantly limited trial courts' discretion to impose consecutive sentences for multiple felony offenses. R.C. 2929.41(A) now reads: "Except as provided in [R.C. 2929.14(C)], a prison term * * * shall be served concurrently with any other prison term * * * ."

{¶ 65} There can be no dispute that S.B. 2's revisions to Ohio's sentencing laws reflect a legislative intent to limit trial-court discretion in imposing consecutive sentences. This is reflected in the fact that the legislature made a conscious decision to move away from the blind deference given to trial courts in former R.C. 2929.41(B)—which allowed courts to impose consecutive sentences with nothing more than the stroke of a pen—and toward a system that requires careful consideration of whether consecutive sentences are indeed necessary to protect the public and whether they are proportionate to the severity of the offenses. R.C. 2929.14(C)(4) reflects the legislature's understanding that while the default rule is that imposed sentences run concurrently, there may be occasions when it is permissible for the trial court to impose consecutive sentences. Therefore, the General Assembly gave trial courts some leeway to impose consecutive sentences, but only in the specified circumstances set forth in R.C. 2929.14(C)(4). *See State v. Bates*, 118 Ohio St.3d 174, 2008-Ohio-1983, 887 N.E.2d 328, ¶ 15-16; *Comer* at ¶ 10, 13. Although the lead opinion would like to stop here, giving trial courts some leeway to impose consecutive sentences is not all S.B. 2 accomplished.

---

legislature's rewriting of the statute evinces a conscious decision to limit a trial court's ability to impose consecutive sentences for *felony* offenses by simply specifying its intent to do so, whereas that ability still existed for sentences on misdemeanor offenses.

**{¶ 66}** The legislature also recognized that the limitations placed on a trial court's discretion to impose consecutive sentences under R.C. 2929.14(C)(4) were not enough on their own to ensure that concurrent sentences remain the norm in Ohio and that consecutive sentences remain the exception. Accordingly, and indeed as this court has acknowledged in past opinions, the legislature made sure to provide meaningful appellate review of a trial court's decision to impose consecutive sentences. *See Comer*, 99 Ohio St.3d 463, 2003-Ohio-4165, 793 N.E.2d 473, at ¶ 10. R.C. 2953.08(G)(2)(a) states that an appellate court may increase, reduce, or otherwise modify a sentence or that it may vacate the sentence and remand the case for resentencing when it clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4).

**{¶ 67}** Regarding appellate review of consecutive sentences under R.C. 2953.08(G)(2), the lead opinion takes the position that this statute—despite the obvious steps the legislature took to significantly limit trial-court discretion in this area—requires that appellate courts nevertheless accord broad deference to the trial court's consecutive-sentence findings. This position, in and of itself, is illogical and unreasoned. But things get worse when considering the lead opinion's "plain language" rationale for its holding, lead opinion at ¶ 5.

**{¶ 68}** The lead opinion begins its plain-language analysis by setting the stage for the tale it wants to tell. It pronounces that "[t]his court has recognized that '[o]rdinarily, appellate courts defer to trial courts' broad discretion in making sentencing decisions' and R.C. 2953.08(G) reflects that deference." (Second brackets added in lead opinion.) Lead opinion at ¶ 11, quoting *State v. Rahab,* 150 Ohio St.3d 152, 2017-Ohio-1401, 80 N.E.3d 431, ¶ 10 (plurality opinion). The plurality opinion in *Rahab*, however, falls short and *does not* evince what this court

recognizes to be the law.[6]  That the lead opinion must, from the start, rely on a plurality opinion to support its argument undermines its persuasiveness.  Then there is also the fact that the sentencing issue in *Rahab* has little to no relation to the issue presented in this case.

{¶ 69} The question before the court in *Rahab* was whether a presumption of vindictiveness arises when a defendant receives a harsher sentence than that offered as part of a plea deal, after rejecting the deal and being found guilty at trial, *Rahab* at ¶ 1-3.  The plurality opinion in *Rahab* spent a large portion of its discussion analyzing and applying federal case law, because the central issue on appeal concerned due-process protections afforded by the federal Constitution.  *Id.* at ¶ 7-18.  Although the latter part of the opinion did apply some of Ohio's sentencing statutes, R.C. 2929.14(C)(4) was never mentioned, nor was R.C. 2953.08(G)(2) discussed within the context of appellate review of a trial court's limited discretion to impose consecutive sentences.  *Rahab* at ¶ 19-31.  Accordingly, *Rahab* offers no support for the lead opinion's contention that appellate courts must give broad deference to trial-court consecutive-sentence findings when reviewing those findings under R.C. 2953.08(G)(2).

{¶ 70} The lead opinion's additional citation to *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 23, does no better.  *See* lead opinion at ¶ 11.  Nowhere in *Marcum* did this court ever say that broad discretion is afforded to a trial court's consecutive-sentence determinations on appeal.  Rather, in *Marcum*, this court said:

---

6. A plurality opinion is "[a]n opinion lacking enough judges' votes to constitute a majority, but receiving more votes than any other opinion." *Black's Law Dictionary* 1125 (8th Ed.2004).  A plurality opinion from this court has "questionable precedential value inasmuch as it * * * fail[s] to receive the requisite support of four justices * * * in order to constitute controlling law." *Kraly v. Vannewkirk*, 69 Ohio St.3d 627, 633, 635 N.E.2d 323 (1994).

> We note that some sentences do not require the findings that R.C. 2953.08(G) specifically addresses. Nevertheless, it is fully consistent for appellate courts to review those sentences that are imposed solely after consideration of the factors in R.C. 2929.11 and 2929.12 *under a standard that is equally deferential to the sentencing court. That is, an appellate court may vacate or modify any sentence that is not clearly and convincingly contrary to law only if the appellate court finds by clear and convincing evidence that the record does not support the sentence.*

(Emphasis added.) *Id*. at ¶ 23. Notably, *Marcum* does not say what level of deference the clear-and-convincing-evidence standard in R.C. 2953.08(G)(2) requires. It just uses the term "equally deferential" before echoing the language of the statute. Furthermore, this aspect of the *Marcum* decision was dicta and has since been repudiated by this court's more recent decision in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.3d 649, ¶ 13, 27-29.

{¶ 71} The lead opinion's analysis of R.C. 2953.08(G)(2)'s language also does not support its contention that the statute requires that broad discretion be given to the trial court's findings under R.C. 2929.14(C)(4). The lead opinion contends that R.C. 2953.08(G)(2) requires an appellate court to have "a firm belief or conviction that the record does not support the trial court's findings" in order to reverse or modify the trial court's order of consecutive sentences, lead opinion at ¶ 15, and further, that the statute's "language is plain and unambiguous and expresses the General Assembly's intent that appellate courts employ a deferential standard to the trial court's consecutive-sentence findings," *id*. But requiring a "firm belief or conviction" that a record does not support a finding does not compel or even suggest a deferential standard of review of the findings. Indeed, this language does not speak to a standard of review at all. As the December 23, 2022

majority opinion explained in detail, a plain reading of R.C. 2953.08(G)(2) reflects only a clear-and-convincing-evidence *standard of proof*. As this court explained:

R.C. 2953.08(G)(2) gives some amount of deference to a trial court's decision concerning consecutive sentences. But this deference—unlike types of deference that are more traditionally associated with appellate review—does not stem from any obligation on the part of the appellate court to defer to the trial court's findings. Instead, it comes from the legislature's determination that an appellate court must use a higher evidentiary standard—as opposed to the one the trial court uses when making the findings—when it reviews the record and determines whether to exercise its authority under R.C. 2953.08(G)(2) to reverse or modify the trial court's order of consecutive sentences.

To understand how this works, it is helpful to first explain what types of deference R.C. 2953.08(G)(2) does not require. R.C. 2953.08(G)(2) does not require the high level of deference that comes with an abuse-of-discretion standard of review. This type of deference would permit a court of appeals to modify a defendant's sentence or to vacate the sentence and remand only when no sound reasoning process can be said to support the decision, or where the trial court exhibited an arbitrary or unconscionable attitude when it imposed the consecutive sentences. *See AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990), citing *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985). In fact, R.C. 2953.08(G)(2) explicitly rejects an abuse-of-discretion standard of review. *See* R.C. 2953.08(G)(2) ("[t]he appellate court's standard

for review is not whether the sentencing court abused its discretion"). R.C. 2953.08(G)(2) also does not state that an appellate court [must] give intermediate or even minimal deference to a trial court's consecutive-sentence findings by applying a "substantial evidence" or a "clearly erroneous" standard of review.[7] [Footnote sic.] Rather, the standard of appellate review for consecutive sentences is exactly what R.C. 2953.08(G) states—that unless the appellate court clearly and convincingly finds that the record does not support the trial court's findings, it may not reverse or modify the trial court's imposition of consecutive sentences. As we have previously stated and repeated: "Clear and convincing evidence is that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 22, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

It is important to understand that the standards referenced above have very specific meanings and fall into one of two

---

7. The "substantial evidence" and "clearly erroneous" standards of review require a reviewing court to apply intermediate to minimal deference to a trial court's findings—in other words, these standards of review are between a de novo and an abuse-of-discretion review. A trial court's finding is "clearly erroneous" when, even though there is some evidence to support the finding, the reviewing court, in considering the entire body of evidence, is left with the definite and firm conviction that a mistake had been committed. *Ancheta v. Daly*, 77 Wash.2d 255, 259, 461 P.2d 531 (1969). The United States Supreme Court has defined "substantial evidence" as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. of New York v. Natl. Labor Relations Bd.*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938); *see also State Emp. Relations Bd. v. Pickaway Cty. Dept. of Human Servs.*, 108 Ohio App.3d 322, 326, 670 N.E.2d 1010 (4th Dist.1995).

categories—either a standard of review or an evidentiary standard of proof. "Abuse of discretion," "clearly erroneous," and "substantial evidence" are traditional forms of appellate-court deference that are applied to a trial court's decisions. They are standards of review that are applied by a reviewing court to certain decisions that are made by a fact-finder. They are, in essence, screens through which reviewing courts must view the original fact-finder's decision. In contrast, "preponderance," "clear and convincing," and "beyond a reasonable doubt" are evidentiary standards of proof. These standards apply to a fact-finder's consideration of the evidence. *R.C. 2953.08(G)(2)'s requirement that appellate courts apply the clear-and-convincing standard on review indicates that the legislature did not intend for appellate courts to defer to a trial court's findings but to act as a second fact-finder in reviewing the trial court's imposition of consecutive sentences.*

In this role as a finder of fact, the appellate court essentially functions in the same way as the trial court when imposing consecutive sentences in the first instance. There are three key differences, however. The first difference, which is discerned from the language of R.C. 2953.08(G)(2), is that the appellate court is constrained to considering only the findings in R.C. 2929.14(C)(4) that the trial court has actually made. In other words, a reviewing court cannot determine for itself which of the three permissible findings within R.C. 2929.14(C)(4)(a) through (c) might apply to satisfy the third required finding for imposing consecutive sentences, as the trial court is permitted to do. The second difference involves the standard of proof. Whereas the trial court's standard of

proof under R.C. 2929.14(C)(4) is a preponderance of the evidence—i.e., that when considered as a whole, the evidence demonstrates that the proposition of fact represented by the finding is more likely true, or more probable, than not—an appellate court applies a clear-and-convincing-evidence standard of proof. And the third difference is the inversion of the ultimate question before the court. Whereas the trial court is tasked with determining whether the proposition of fact represented by each finding is more likely— or more probably—true than not, an appellate court's task is to determine whether it has a firm belief or conviction that the proposition of fact represented by each finding is not true on consideration of the evidence in the record.

Thus, when viewed in its proper context, the deference that a trial court's consecutive-sentence findings receive comes from the language of R.C. 2953.08(G)(2), which imposes a higher evidentiary standard to reverse or modify consecutive sentences. It does not stem from any statutory requirement that the appellate court defer to the trial court's findings when considering whether reversal or modification is appropriate under R.C. 2953.08(G)(2).

A trial court makes its consecutive-sentencing findings using a preponderance-of-the-evidence standard—i.e., a more-likely-than-not standard. But pursuant to R.C. 2953.08(G)(2), the appellate court can reverse or modify the trial court's imposition of consecutive sentences if it clearly and convincingly finds that the record does not support the findings. The evidentiary standard for *changing* the trial court's imposition of consecutive sentences is not deference to the trial court; the evidentiary standard is that the appellate court, upon a de novo review of the record and the

findings, has a "firm belief" or "conviction" that the findings—the criteria mandated by the legislature to be met before the exception to concurrent sentences can apply—are not supported by the evidence in the record. *See Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, at ¶ 22; *see also Cross*, 161 Ohio St. at 477, 120 N.E.2d 118. It is important to note that although the clear-and-convincing-evidence standard imposes a higher evidentiary standard for changing a trial court's imposition of consecutive sentences, the level of certainty required to reverse or modify an order of consecutive sentences under the clear-and-convincing standard "does not mean clear and *unequivocal*," (emphasis sic) *Cross* at 477, again, it means only a firm belief or conviction, *see id.*; *see also Marcum* at ¶ 22.

(First emphasis added.) *Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 18-23.

{¶ 72} Indeed, the lead opinion undermines its position that R.C. 2953.08(G)(2)'s language requires appellate-court deference to the trial court's findings when it agrees that the clear-and-convincing-evidence standard in R.C. 2953.08(G)(2) necessarily requires that an appellate court serve in a role as a *trier of fact* and not in the traditional role of a reviewing court. The lead opinion states that "this court has defined 'clear and convincing evidence' as 'that measure or degree of proof * * * which will produce in the mind of the *trier of facts* a firm belief or conviction as to the facts sought to be established.' " (Ellipsis sic; emphasis added.) Lead opinion at ¶ 14, quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. It further states, "[T]herefore, an appellate court is directed that it must have a firm belief or conviction that the record does not support the trial court's findings before it may

increase, reduce, or otherwise modify consecutive sentences." *Id*. at ¶ 15. R.C. 2953.08(G)(2)'s standard requires the appellate court to act as a trier of fact on appeal, and the majority's own explanation of the standard affirms this fact. But an appellate court cannot act as a trier of fact while also deferring to the factual findings of another—in this case, the trial court. The two roles are incompatible.

{¶ 73} The lead opinion also disagrees with the December 23, 2022 majority opinion's determination that R.C. 2953.08(G)(2) requires a de novo review of the record and findings. Lead opinion at ¶ 16. The lead opinion states that de novo review requires a court to exercise independent judgment, which it claims is "incongruous with the deference that the legislature stated an appellate court must give [consecutive-sentence] findings in the statutory language of R.C. 2953.08(G)(2)." *Id*. at ¶ 16. As explained above, R.C. 2953.08(G)(2)'s language imposes an evidentiary standard, not a standard of review. Although the evidentiary standard might be higher and slightly different on appeal than it is for the trial court—such that reversal or modification of the imposition of consecutive sentences may not be warranted in many cases—nothing about R.C. 2953.08(G)(2)'s standard for reversal or modification requires appellate-court deference to the trial court's findings. De novo review of the record and findings under a different evidentiary standard is *not* incongruous with the statute's language; it is in fact what the statute demands.

### The majority fails to review Gwynne's sentence

{¶ 74} Four justices of this court have chosen to grant reconsideration of this court's December 23, 2022 majority opinion, which did nothing more than remand this matter to the Fifth District—in light of the much-needed clarifications identified in that opinion regarding the application of R.C. 2953.08(G)(2) and 2929.14(C)(4)—for further consideration of whether Gwynne's 65-year prison sentence should be affirmed. Given this posture, it is disappointing, to say the least, that the lead opinion gives short shrift to such an important criminal-sentencing

issue confronting trial courts and courts of appeals every day. In fact, the lead opinion spends more time quoting black-letter law about how to interpret statutes and how it is the legislature, and not this court, that has the authority to prescribe punishments than it does analyzing the law in relation to the question before the court. When the lead opinion finally does address the central issue before the court—whether the record does not support the trial court's findings—it provides only a single paragraph of analysis before concluding that Gwynne's sentence should be affirmed. *See* lead opinion at ¶ 18.

{¶ 75} Regarding this single-paragraph analysis of the central issue, although the lead opinion mentions some facts and evidence from the record, it does not attempt to explain how those facts or evidence concern the findings made by the trial court under R.C. 2929.14(C)(4), or how they show that the standard for reversal or modification under R.C. 2953.08(G)(2) has not been met. The paragraph is little more than an appeal to emotion. There is no considered application of the law to the facts or evidence, and under no circumstances can it be said that this analysis considers whether the record clearly and convincingly does not support the trial court's R.C. 2929.14(C)(4) findings.

{¶ 76} Indeed, the lead opinion seems to have purposefully overlooked aspects of the record that cut strongly against the trial court's imposition of a 65-year aggregate prison term. These include the trial court's recognition at sentencing that Gwynne was "in the low to moderate risk category for likelihood of reoffending" and its observation that "[o]ne factor making this a less serious set of felonies [is] the lack of physical harm to other persons." It is hard to understand how the trial court could have reached the conclusion that a series of consecutive prison terms amounting to a 65-year aggregate prison term was necessary to punish Gwynne or to protect the public from future crime, and also not disproportionate to her misconduct, after acknowledging that such mitigating factors were present in her case. Those factors would seem to definitively rule out any concerns that

Gwynne is that rare but extremely dangerous type of offender for whom a 65-year prison term is warranted. Other factors demonstrating that the imposition of consecutive sentences amounting to a 65-year aggregate term was unnecessary and disproportionate include Gwynne's acceptance of responsibility for her crimes—by pleading guilty to the offenses and by apologizing to her victims in open court—and the fact that the parties and the court were in agreement that the items she stole often had no monetary value whatsoever or were of only limited monetary value, a point demonstrated by the court's restitution order of less than $10,000.

{¶ 77} Although it is undoubtedly true that Gwynne's criminal actions spanned a period of several years and that her conduct was aimed at a vulnerable population, it is also true that Gwynne had no notable criminal history prior to this time and, because of this, it is unknown what effect rehabilitation efforts might have had on her behavior. If the lead opinion is going to reverse our previous judgment ordering a remand, then it should at least attempt an honest analysis of the question before the court.

{¶ 78} What is more, the lead opinion seems to have created an entirely new standard for an appellate court's reversal or modification of consecutive sentences under R.C. 2953.08(G)(2) when it determines that Gwynne's 65-year sentence should be affirmed on the basis that the record does not "overwhelmingly support a contrary result,"[8] lead opinion at ¶ 18. This expression is not present in R.C. 2953.08(G)(2) or any of our prior case law interpreting the statute. The clear-and-convincing-evidence standard of proof *is*, however, reflected in the language of R.C. 2953.08(G)(2) and requires only that the appellate court find by clear and

---

8. The dissent from the original majority opinion also used new standards without any attempt at explaining their origin. Specifically, the dissent stated: "The record in this case does not clearly and convincing[ly] fail to support the trial court's findings; in other words, it does not overwhelmingly support a contrary result concerning the imposition of consecutive sentences." *Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 61 (Kennedy, J., dissenting). It further stated, "The trial court's imposition of consecutive sentences was not clearly wrong." *Id*.

convincing evidence—which is "that measure or degree of proof * * * which will produce in the mind of the trier of facts a *firm belief or conviction*," (emphasis added) *Cross*, 161 Ohio St. at 477, 120 N.E.2d 118—that the record does not support the consecutive-sentence findings. Clear and convincing "does not mean clear and *unequivocal*." (Emphasis sic.) *Id.* It is entirely possible for an appellate court to firmly believe or be convinced that the record does not support the trial court's findings, without determining that the record "overwhelmingly support[s] a contrary result concerning the imposition of consecutive sentences." Lead opinion at ¶ 18.

{¶ **79**} Using this case as an example, it is entirely possible and reasonable for an appellate court to firmly believe that the record does not support the finding that "consecutive service is necessary to protect the public from future crime or to punish the offender," *see* R.C. 2929.14(C)(4). An appellate court could *firmly believe* that because the evidence in the record shows that Gwynne already had a low-to-moderate risk of reoffending and was 55 years old at the time she was prosecuted for her offenses (she is now 62) and, since criminal activity tends to reduce with age,[9] the record does not support the finding that consecutive sentences are *necessary* to protect the public from future crime. Similarly, an appellate court could *firmly believe* that consecutive sentences are not necessary to protect the public based on evidence in the record indicating that Gwynne's offenses were crimes of opportunity, in which she used her position as a nurse's aide to gain access to her victims, and further, that because her convictions will show up on a background check going forward, she is not likely to regain the access needed to

---

9. *See, e.g.*, Nazgol Ghandnoosh, Emma Stammen & Connie Budaci, *Felony Murder: An On Ramp for Extreme Sentencing*, 7 (Mar. 2022), https://www.sentencingproject.org/reports/felony-murder-an-on-ramp-for-extreme-sentencing/ (accessed Aug. 23, 2023) ("Extreme sentences imprison people who have aged out of their crime-prone years. The age-crime curve is a longstanding and well-tested concept in criminology, depicting the proportions of individuals in various age groups who are engaged in criminalized activity").

commit similar crimes in the future. It would also be reasonable for an appellate court to have a firm belief that the record does not support the finding that consecutive sentences are *necessary* to punish Gwynne for her crimes in light of the following facts and evidence: (1) she accepted responsibility for her actions by pleading guilty rather than requiring government time and resources to convict her and subjecting the victims to a trial, (2) she was contrite at sentencing and agreed to pay restitution to her victims, and (3) the unusual nature and circumstances surrounding Gwynne's criminal actions suggest that there might have been a mental-health component to her behavior or at any rate, that her behavior does not reflect the behavior of the worst of the worst offenders deserving of consecutive-sentence punishment.[10] In any of the above-mentioned circumstances, it does not matter that there might be some or even many facts tending to support the trial court's consecutive-sentence findings; what matters is that there is evidence in the record that could leave the appellate court with the "firm belief" that the record does not support one or more of the trial court's findings. The lead opinion's insistence that the record must "overwhelmingly support a contrary result" concerning the imposition of consecutive sentences before an appellate court may take action to reduce or modify the sentence, lead opinion at ¶ 18, impermissibly grafts a "quantity of the evidence" component onto the statute where none exists.

{¶ 80} This case presents several issues of great public importance, which is why the court accepted it for review. One of the most important issues is what appellate review of consecutive sentences should entail under R.C. 2953.08(G)(2) and how, in practical effect, it should work. Prior decisions from this court, as well

---

10. The record before this court shows that Gwynne, for the most part, did not sell or destroy or attempt to sell or destroy the items she stole. Instead, she kept the approximately 3,000 stolen items in several large storage containers in her home. The objects themselves do not reflect the kind of items that would be stolen for selfish motives, like financial gain or a desire to make personal use of them. Rather, the items stolen were mostly objects of sentimental value—e.g., dog tags, military medals, family photos, and baby bracelets.

as those from the courts of appeals, have lacked clarity on this issue, which means that appellate courts lack needed guidance on what their role is in consecutive-sentence review. That this case has come before the court for the second time is certainly evidence of that concern. Far from providing clear guidance to courts of appeals on how to conduct appellate review of consecutive sentences, however, the four justices granting reconsideration have muddied the waters even further, and the lead opinion fails to conduct any reasoned analysis and fails to apply any consistent or even coherent standard to its review. This is the result of granting reconsideration after this court had established clear guidelines—based firmly in the language of the statutes involved, the legislature's intent behind those statutes, and this court's prior case law—for appellate review of consecutive sentences in the December 23, 2022 majority opinion. For these reasons, I dissent.

TRAPP and BRUNNER, JJ., concur in the foregoing opinion.

_____

**BRUNNER, J., dissenting.**

## INTRODUCTION

**{¶ 81}** I join Justice Stewart's dissenting opinion. I write separately to emphasize a simple point—R.C. 2929.14(C)(4) requires a proportionality analysis, meaning that a sentencing court must consider the *aggregate* term of imprisonment to be imposed because, without such consideration, there is no coherent way to evaluate whether multiple, consecutive sentences are proportional to an offender's overall conduct for which the sentences have been imposed. In other words, I would continue to hold that R.C. 2929.14(C)(4)'s command that sentencing courts find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" means that sentencing courts must be able to articulate that the consecutive sentences, in the aggregate and as they will actually be imposed, are not disproportionate to the seriousness of the conduct and the danger to the public. Because the new, post-

reconsideration lead opinion concludes otherwise, and for the reasons discussed in Justice Stewart's dissenting opinion, I dissent as well.

## ANALYSIS

{¶ 82} In Ohio, it is presumed by statute that prison terms are to be imposed concurrently, *see* R.C. 2929.41(A), absent specified circumstances that are not applicable here, *see, e.g.*, R.C. 2929.14(C)(1) through (3). And when a trial court exercises its discretion to impose consecutive sentences, it must make certain findings:

> If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender *and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public*, and if the court also finds any of the following:
>
> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
>
> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

(Emphasis added.) R.C. 2929.14(C)(4).

{¶ 83} Today, the lead opinion essentially decides that a trial court need not really consider the aggregate term of the consecutive sentences to be imposed when applying R.C. 2929.14(C)(4), and it does so by finding that "[t]he terms 'consecutive service' and 'consecutive sentences' each have only one relevant meaning: the running of two or more sentences one right after the other." Lead opinion, ¶ 21. However, while justice is to be blind to outside influences, it must not be blind to the whole of the law and ignore the rest of the requirements of R.C. 2929.14(C)(4).

{¶ 84} There is no dispute that here, the trial court recited the statutory findings in R.C. 2929.14(C)(4)—more or less verbatim—during Gwynne's sentencing hearing and again in its written judgment entry. Thus, no one can argue that the trial court failed to make the necessary findings. The more difficult question, however, is whether the record actually supports those findings. My first query is whether the Fifth District Court of Appeals should have found that the record "clearly and convincingly" did "not support the sentencing court's findings under [R.C. 2929.14(C)(4)]," *see* R.C. 2953.08(G)(2). Particularly relevant here is that R.C. 2929.14(C)(4) requires, among other factors, consideration of whether "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public."

{¶ 85} Gwynne argues—albeit largely in the context of her Eighth Amendment argument—that her sentence was grossly disproportionate to the seriousness of her conduct. Comparing sentences received by other offenders and

54

considering Gwynne's actual convictions, it is difficult to disagree with her argument.

{¶ 86} Offenders in cases involving crimes similar to Gwynne's have uniformly received sentences amounting to a fraction of what Gwynne received. In *State v. Boswell*, the defendant had defrauded 13 elderly persons of over $60,000 and was facing 20 counts of felony theft from the elderly, two counts of attempted felony theft from the elderly, and one count of engaging in a pattern of corrupt activity. 6th Dist. Erie No. E-18-053, 2019-Ohio-2949, ¶ 2-3. The defendant agreed to plead guilty to two counts of fourth-degree felony theft, each of which carried a maximum prison sentence of 18 months. *Id.* at ¶ 4. In exchange, the prosecution recommended a sentence of community control. *Id.* But, citing the defendant's disingenuous expressions of remorse and his threatening behavior toward some of his elderly victims, the trial court imposed two 17-month sentences, to be served consecutively: a 34-month aggregate sentence that was just two months shy of the maximum. *Id.* at ¶ 5-14. The sentence was affirmed on appeal. In *State v. Knox*, the defendant was facing 21 counts of burglary and two lesser offenses for entering 24 homes to steal copper pipes to finance his heroin addiction. 2d Dist. Montgomery No. 25774, 2015-Ohio-4198, ¶ 3. He pled guilty to all the charged offenses and, despite a prior record of burglaries and thefts, received an aggregate sentence of ten and a half years. *Id.* at ¶ 3-4, 7. And in *State v. Lynch*, the defendant had broken into several homes, stealing "money, jewelry, clothing, and other valuable property" and was charged with nine counts of burglary, four counts of petty theft, three counts of theft, one count of possessing criminal tools, and one count of obstructing official business. 12th Dist. Butler No. CA2017-12-182, 2018-Ohio-3849, ¶ 2. He pled guilty to nine burglary charges and was sentenced to nine years in prison, one year per offense. *Id.* at ¶ 3. The sentence was affirmed on appeal. *Id.* at ¶ 16-17.

**{¶ 87}** Conversely, cases in which offenders have received prison sentences of 65 years without a life tail are rare, and they almost always involve rape, kidnapping, torture, or other violent and heinous behavior. *See, e.g.*, *State ex rel. Husband v. Shanahan*, 157 Ohio St.3d 148, 2019-Ohio-1853, 133 N.E.3d 467, ¶ 2 (petitioner had been convicted of aggravated burglary, abduction, and rape and received a sentence of 65 years), *overruled on other grounds by State ex rel. Parker Bey v. Byrd*, 160 Ohio St.3d 141, 2020-Ohio-2766, 154 N.E.3d 57; *State v. Powell*, 2d Dist. Montgomery No. 29097, 2022-Ohio-1343, ¶ 2-5, 46 (defendant convicted of kidnapping and repeatedly raping a teenage hitchhiker while threatening her with a knife was sentenced to 15 to 65 years). In one case in which a defendant received a prison sentence of 65 to 70 and a half years, the court described the defendant's conduct as follows:

In August 2019, [the defendant] was out on bond for previous charges related to domestic violence against * * * the mother of his children, and a subsequent police chase and standoff. On or about August 27, 2019, [the defendant] waited with a knife for [the mother of his children] to return to her residence. She arrived home with three minor children. [The defendant] confronted [her] with the knife and forced her into the residence. [The defendant] also made entry into the residence and locked the children in a bedroom. Over the next several hours [the defendant] terrorized [the mother of his children] and severely injured her. He laughed at her, belittled her, and threatened to murder their five-year-old daughter in front of her. The situation eventually led to a police standoff, which lasted for some time. [The defendant] used [the mother of his children] as a shield during the standoff. He stripped [her] naked, dragged her down the stairs by her hair, kicked

her repeatedly, choked her until she lost consciousness, deeply cut her face with a knife, and then urinated on her injuries. The deep knife injury to [her] face, from her temple to jawline, caused serious lacerations that resulted in disfigurement. He nearly caused [her] death due to blood loss.

*State v. Riley*, 11th Dist. Trumbull No. 2020-T-0063, 2021-Ohio-1367, ¶ 6.

**{¶ 88}** What Gwynne did strikes a nerve because of the ages and vulnerability of the victims; her conduct caused much more harm than a single run-of-the-mill theft would have because of its extensive nature, the vulnerability of her victims, and the personal meaning of the items taken. She took with deception what she had no right to take, and her thefts caused emotional and financial harm to fragile, elderly people. The victims and their families did not need this, nor should they have had to experience it. Nevertheless, Gwynne did not commit violence.

**{¶ 89}** And what Gwynne did pales in comparison to the nature of the crimes that generally result in a 65-year prison term; her aggregate sentence is vastly longer than those that are typically imposed for multiple nonviolent theft and even burglary offenses. *This* type of analysis is necessary for justice. *This* is what a proportionality analysis looks like. And it simply cannot be coherently accomplished without considering the actual, aggregate prison term to be imposed.[11]

**{¶ 90}** While the record shows that *some* number of consecutive sentences would not be "disproportionate to the seriousness of [Gwynne's] conduct," what is equally clear is that stacking so many consecutive sentences to reach an aggregate

---

11. Even the dissent in *Gwynne IV* tacitly admitted this fact: "When a trial court orders a defendant to serve multiple consecutive prison terms, of course it knows the amount of time that it has sentenced the defendant to serve." *State v. Gwynne*, ___ Ohio St.3d ___, 2022-Ohio-4607, ___ N.E.3d ___, ¶ 70 (Kennedy, J., dissenting) ("*Gwynne IV*").

sentence of 65 years *is* disproportionate to both the seriousness of her conduct and any threat she poses to the public. R.C. 2929.14(C)(4). The very fact that R.C. 2929.14(C)(4) requires proportionality balancing (albeit in the negative—"not disproportionate") means that, along with following statutes and criminal rules, courts must apply judicial discretion to ensure basic fairness in this proportionality analysis.

**{¶ 91}** The sentences that a trial judge imposes for crimes must be fully within the guidelines mandated by the legislature. But the overriding purposes of felony sentencing are to (1) "protect the public from future crime by the offender and others" (i.e., general and specific deterrence), (2) "to punish the offender," and (3) "to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). For that reason, the trial judge must choose with care the sentence to be imposed, first taking into account the law and its required considerations but also the notion that a criminal sentence has an effect on the conscience of the community where the crimes occurred. A wise judge will, through love of service and the community, carefully use the power of judicial discretion to balance the many competing interests at play in felony sentencing. By their very nature, felonies are considered serious offenses, for which incarceration is overwhelmingly more likely than not to result in placement in the state prison system (as opposed to the county jail). *See, e.g.*, R.C. 2929.13. A felony offender almost always carries the consequences of her crime(s) for many years, if not for life. *See* R.C. 2953.32 (discussing which records of criminal offenses may be sealed and which may not). So, when exercising the power to incarcerate an offender, a wise judge will impose incarceration in proportion to the degree that the offender's actions have pierced the community's conscience, considering the overall sentence in relation to how deeply the offender's conduct has caused a collective wound to the community's

sense of well-being. When a judge stacks sentences in a manner that shocks the conscience of the community rather than in a way that works to heal it, justice is not demonstrated, and public confidence in the judiciary may be shaken.

{¶ 92} Finally, it should be noted that R.C. 2953.08(F) requires district courts of appeals to consider the *entire* record when reviewing a sentence under R.C. 2953.08, and R.C. 2953.08(G)(2)(a) reiterates that reviewing courts are to use the *entire* record to consider whether it supports a trial court's findings made under R.C. 2929.14(C)(4). And as an overarching principle to this analysis, R.C. 1.47(C) establishes that we must presume that the General Assembly intended a "just and reasonable result" when it enacted these statutes. What is just, reasonable, and sensible, given the text of R.C. 2929.14(C)(4) and the nature of sentencing, is for the trial court to consider whether the consecutive terms it actually intends to impose are disproportionate to the seriousness of the offender's conduct and also the danger the offender poses to the public, not whether any hypothetical consecutive sentence might or might not be disproportionate. That is what a majority of this court determined in *Gwynne IV*. That finding is supportable under the law, as it is neither erroneous nor inappropriate. Thus, we should not be reconsidering it now.

**CONCLUSION**

{¶ 93} On the facts of this case, it appears to be undisputed that no one offense Gwynne committed justified a long sentence. There is no question that she stole personal items of great meaning from highly vulnerable victims. But she committed no violence and the things she stole were (with some exceptions) not especially costly. Thus, the facts of Gwynne's case incisively show that when an offender commits many offenses, each of which is legally punishable by only a short term of imprisonment, the imposition of some number of consecutive sentences may be appropriate, but overall, excessive stacking is inconsistent with the proportionality determination required by R.C. 2929.14(C)(4).

**{¶ 94}** The fact that an overall course of criminal conduct may be proportional to stacking *some* number of sentences consecutively is not equivalent to finding that *all* of the sentences for every offense should be imposed consecutively to one another. In some cases, where only a few very serious offenses are at issue, this may be a distinction without a difference. But in a case like Gwynne's, with many less serious offenses at issue, the distinction between requiring some sentences to be served consecutively and all sentences to be served consecutively is stark. I would continue to hold, as this court did in *Gwynne IV*, that R.C. 2929.14(C)(4)'s command that sentencing courts must find that "consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public" means that those courts must be able to articulate why the consecutive sentences that will actually be imposed, taken in the aggregate, are not disproportionate to the seriousness of the conduct and the danger to the public.

**{¶ 95}** The trust that the public places in judges to make decisions in line with intangible concepts such as caring for a community's collective conscience cannot be quantified or overstated. When judges insert their own personal experiences or opinions to reach and impose a "shocking" sentence that overall is disproportionate to the seriousness of the conduct and the danger to the public, justice is maimed. Ohio's citizens expect justice to be fair. Judges are given leeway under the state's sentencing laws to ensure that fairness. Because the new, post-reconsideration lead opinion does not consider this, and for the reasons discussed in this dissent and ably discussed in Justice Stewart's dissenting opinion, I dissent from the judgment of the post-reconsideration lead opinion that affirms Gwynne's original, lengthy sentence.

TRAPP, J., concurs in the foregoing opinion.

––––––––––––––––

Melissa Schiffel, Delaware County Prosecuting Attorney, and Mark C. Sleeper, Assistant Prosecuting Attorney, for appellee.

Timothy Young, Ohio Public Defender, and Craig Jaquith, Assistant Public Defender, for appellant.

Dave Yost, Attorney General, Benjamin M. Flowers, Solicitor General, and Diane R. Brey, Deputy Solicitor General, urging affirmance for amicus curiae Ohio Attorney General Dave Yost.

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Daniel T. Van, Assistant Prosecuting Attorney, in support of appellee's motion for reconsideration for amicus curiae Cuyahoga County Prosecutor's Office.

Rion, Rion & Rion, L.P.A., Inc., Catherine H. Breault, and Jon Paul Rion, in support of appellant for amicus curiae Rion, Rion & Rion, L.P.A., Inc.

_____