[Cite as *State v. Antonacci*, 2024-Ohio-946.]

# IN THE COURT OF APPEALS OF OHIO

SEVENTH APPELLATE DISTRICT
BELMONT COUNTY

STATE OF OHIO,

Plaintiff-Appellee,

v.

CALEN ANDREW ANTONACCI,

Defendant-Appellant.

---

**OPINION AND JUDGMENT ENTRY**
Case No. 23 BE 0030

---

Criminal Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 23 CR 26

**BEFORE:**
William A. Klatt, Retired Judge of the Tenth District Court of Appeals,
Sitting by Assignment,
Carol Ann Robb, Mark A. Hanni, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. J. Kevin Flanagan,* Belmont County Prosecutor, and *Atty. Jacob A. Manning*,
Assistant Prosecuting Attorney, for Plaintiff-Appellee and

*Atty. Brian A. Smith*, Brian A. Smith Law Firm, LLC, for Defendant-Appellant.

Dated:  March 14, 2024

**KLATT, J.**

{¶1}   Appellant, Calen Andrew Antonacci, appeals from the June 23, 2023 judgment of the Belmont County Court of Common Pleas consecutively sentencing him to a total indefinite prison term of 14 years (minimum) to 18 years (maximum) for felonious assault and aggravated burglary following a guilty plea.[1]  On appeal, Appellant alleges the trial court's imposition of consecutive sentences was not supported by the record. Finding no reversible error, we affirm.

### FACTS AND PROCEDURAL HISTORY

{¶2}   On February 2, 2023, Appellant was indicted by the Belmont County Grand Jury on five counts: count one, attempted murder, a felony of the first degree in violation of R.C. 2923.02, 2903.02(A) and (D), and 2929.02(B); count two, felonious assault, a felony of the second degree in violation of R.C. 2903.11(A)(2) and (D)(1)(a); count three, burglary, a felony of the second degree in violation of R.C. 2911.12(A)(1) and (D); and counts four and five, aggravated burglary, felonies of the first degree in violation of R.C. 2911.11(A)(1) and (B).[2]  Appellant was appointed counsel, pled not guilty by reason of insanity, waived his right to a speedy trial, and released on a $50,000 bond.  Just a few days after his release, Appellant's bond was revoked because he tried making contact with a victim in the case.

{¶3}   Due to his plea of not guilty by reason of insanity, Appellant's competency was evaluated by forensic psychologist Jaime C. Adkins, Psy.D., ABPP.  It was revealed

---

[1] Am. Sub. S.B. No. 201, 2018 Ohio Laws 157, known as the "Reagan Tokes Law," significantly altered the sentencing structure for many of Ohio's most serious felonies by implementing an indefinite sentencing system for those non-life felonies of the first and second degree, committed on or after March 22, 2019.

[2] The charges stem from Appellant's involvement in stabbing Justin Huffman ("Huffman") in the neck with a knife.  Appellant entered the house at issue without permission.  Appellant appeared highly intoxicated and admitted to drinking alcohol.  Present in the home were Huffman, Anna Willson ("Willson"), and Michael Lewis ("Lewis").  All three had to subdue Appellant before calling 911.  Willson was Appellant's prior girlfriend.  Willson apparently left Appellant for Huffman.  Appellant claimed he became depressed as a result of the break-up.  Willson told police officers that Appellant had pulled a gun on her during their break-up while her children were around.  Willson also showed officers text messages in which Appellant said he knew Huffman's address (and gave the correct address), agreed that he had threatened harm to himself or others, and told her to let Huffman know that he would see him soon.

that Appellant "is currently capable of understanding the nature and objective of the proceedings against him and assisting counsel in his own defense." *See* (5/17/2023 Judgment Entry). It was also revealed that Appellant "was not suffering from a severe mental disease or defect at the time of the alleged offense, such that he did have intact knowledge of wrongfulness." *See* (5/22/2023 Judgment Entry). Following a hearing, the trial court found Appellant was not insane at the time of the alleged crimes.

{¶4} Thereafter, Appellant entered into plea negotiations with Appellee, the State of Ohio. On June 7, 2023, Appellant pled guilty to count two, felonious assault, and count four, aggravated burglary, as charged in the indictment. The trial court accepted Appellant's guilty plea after finding it was made in a knowing, intelligent, and voluntary manner pursuant to Crim.R. 11. The court found Appellant guilty on counts two and four, dismissed counts one, three, and five, ordered a pre-sentence investigation ("PSI"), and deferred sentencing.[3]

{¶5} A sentencing hearing was held on June 20, 2023. The trial court considered the record, all of the correspondence from the families, friends, and the victims, the oral statements, the PSI, and the report from the Eastern Ohio Correction Center finding Appellant inappropriate for placement. The court also considered the purposes and principles of sentencing under R.C. 2929.11, the seriousness and recidivism factors under R.C. 2929.12, the prison factors under R.C. 2929.13, and found that consecutive sentences pursuant to R.C. 2929.14 are necessary to protect the public from future crimes and to punish Appellant.

{¶6} On June 23, 2023, the trial court consecutively sentenced Appellant to six years (minimum) to nine years (maximum) on count two and eight years (minimum) to 12 years (maximum) on count four. Thus, Appellant was ordered to serve a total indefinite prison term of 14 years (minimum) to 18 years (maximum), less 137 days of jail-time credit. The court further notified Appellant that he would be subject to mandatory post-release control for up to five years, but not less than two years.

{¶7} Appellant filed a timely appeal and raises one assignment of error.

---

[3] The PSI reveals Appellant had prior misdemeanor offenses; is in good physical health; has no diagnosed mental health related issues; admits to having an alcohol abuse problem but denies any drug abuse issues; and includes his Risk Assessment as "Low."

## ASSIGNMENT OF ERROR

**THE TRIAL COURT'S IMPOSITION OF CONSECUTIVE SENTENCES WAS NOT SUPPORTED BY THE RECORD.**

**{¶8}** In his sole assignment of error, Appellant contends the trial court erred in imposing consecutive sentences.

**{¶9}** R.C. 2929.14(C)(4) states:

(4) If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

R.C. 2929.14(C)(4)(a)-(c).

{¶10}  Specifically, Appellant claims the imposition of consecutive sentences was not supported by the record:

> * * * where Appellant had received medication and counseling; where Appellant had mental health issues that, combined with evidence of Appellant's medication and counseling, rendered the finding that Appellant was a danger to the public clearly and convincingly not supported by the record; and where Appellant's relative lack of criminal history, combined with his vocational and educational background, rendered the finding that Appellant "posed a danger to the public" clearly and convincingly not supported by the record.

(10/25/2023 Appellant's Brief, p. 2).

> In reviewing consecutive sentence arguments, the appellate court's standard of review is not whether the sentencing court abused its discretion; rather, the question is whether the appellate court "clearly and convincingly finds" (1) the record does not support the sentencing court's findings under R.C. 2929.14(C)(4) or (2) the sentence is otherwise contrary to law. R.C. 2953.08(G)(2)(a)-(b). A clear and convincing standard involves "a firm belief or conviction" (and is a higher standard than a mere preponderance of the evidence). *Cross v. Ledfo*rd, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

> "In order to impose consecutive terms of imprisonment, a trial court is required to make the findings mandated by R.C. 2929.14(C)(4) at the sentencing hearing and incorporate its findings into its sentencing entry, but it has no obligation to state reasons to support its findings." *State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, ¶ 37. A sentence is contrary to law if the sentencing court fails to make the statutory consecutive findings. *Id.* (remanding for resentencing where the findings were not made at the sentencing hearing or in the entry).

Pursuant to R.C. 2929.14(C)(4), a felony sentencing court can impose consecutive sentences after finding: (1) consecutive service is necessary to protect the public from future crime or to punish the offender; (2) consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public; and (3) one of the three options thereafter listed as (a) through (c). R.C. 2929.14(C)(4)(a)-(c). "(A) word-for-word recitation of the language of the statute is not required, and as long as the reviewing court can discern that the trial court engaged in the correct analysis and can determine that the record contains evidence to support the findings, consecutive sentences should be upheld." *Bonnell*, 140 Ohio St.3d 209 at ¶ 29.

*State v. Jensen*, 7th Dist. Mahoning No. 22 MA 0122, 2023-Ohio-4717, ¶ 6-8.

{¶11} In his brief, Appellant emphasizes the Ohio Supreme Court's 2022 *Gwynne* holding.[4]

In that case, the Supreme Court instructed the courts to consider the number of prison terms and the resulting aggregate sentence when imposing or reviewing consecutive sentences. *Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, at ¶ 1, 12, 29, 31. The Court also announced a new interpretation of R.C. 2953.08(G), stating the appellate court uses a de novo, non-deferential review in ascertaining if the record supports the consecutive sentence (applying a clear and convincing standard instead of the trial court's preponderance of the evidence standard). *Gwynne*, __ Ohio St.3d __, 2022-Ohio-4607, __ N.E.3d __, ¶ 1, 21. However, a majority of the Court recently reconsidered and vacated the

---

[4] Appellant's brief was filed on October 25, 2023. That same date, the Ohio Supreme Court reconsidered and vacated the 2022 *Gwynne* decision. *State v. Gwynne*, __ Ohio St.3d __, 2023-Ohio-3851, __ N.E.3d __. Appellant currently asserts that even under the standard of review now set forth in 2023 *Gwynne*, "the trial court's imposition of consecutive sentences was not supported by the record." (11/27/2023 Appellant's Reply Brief, p. 2).

2022 *Gwynne* decision. *State v. Gwynne*, __ Ohio St.3d __, 2023-Ohio-3851, __ N.E.3d __.

*Jensen, supra,* at ¶ 14.

> The Ohio Supreme Court has recently spoken on the standard by which an appellate court should review a trial court's consecutive sentences findings. In *State v. Gwynne*, Slip Opinion No. 2023-Ohio-3851, ¶ 5, the Ohio Supreme Court reconsidered its prior decision in *State v. Gwynne*, 2022-Ohio-4607, —— N.E.3d ——, and held that "(t)he plain language of R.C. 2953.08(G)(2) requires an appellate court to defer to a trial court's consecutive-sentence findings, and the trial court's findings must be upheld unless those findings are clearly and convincingly not supported by the record."

*State v. Grant*, 5th Dist. Muskingum No. CT2023-0023, 2023-Ohio-4614, ¶ 23.

**{¶12}** The Ohio Supreme Court has now made it clear that "an appellate court is directed that it must have a firm belief or conviction that the record does not support the trial court's findings before it may increase, reduce, or otherwise modify consecutive sentences. *Gwynne*, 2023-Ohio-3851, ¶ 15. "The statutory language does not require that the appellate court have a firm belief or conviction that the record supports the findings." *Id.* Thus, the Ohio Supreme Court in 2023 *Gwynne* specifically rejected the holding in 2022 *Gwynne* with respect to conducting a de novo review. *Id.* In short, we should review the sentence imposed by the trial court and only reverse if the record does not clearly and convincingly support the trial court's findings. *Gwynne*, 2023-Ohio-3851; *Grant, supra,* at ¶ 23.

**{¶13}** At the sentencing hearing, the trial court heard from the prosecutor on behalf of the State, defense counsel on behalf of Appellant, Huffman, Renee Boreman (Huffman's mother), Willson, Clarence Antonacci (Appellant's father), and Appellant (who apologized).

**{¶14}** Huffman testified that on the day of the attack, it took three people (Huffman, Willson, and Lewis) to subdue Appellant because "he was there to hurt us and try to kill

Case No. 23 BE 0030

us." (6/20/2023 Sentencing Hearing Tr., p. 6). It was difficult for Huffman because "every day [he] was afraid that [Appellant] was going to come back and try to kill any of us or hurt us." (*Id.*) Huffman continued to have nightmares about Appellant murdering or hurting him and said he will live with that fear. (*Id.*) Huffman asked that Appellant receive the maximum possible sentence "so that [Willson's] children and we can all grow up and move away from this so [Appellant] will never have any chance of ever seeing us again." (*Id.* at p. 7).

**{¶15}** Huffman further indicated that the attack was preceded by threatening text messages to Willson and a co-worker about "threatening to kill [Huffman], killing [his] farm animals, going to hurt [him] and [his] family." (*Id.* at p. 8). Renee Boreman, Huffman's mother, also testified regarding her own fear that Appellant is "very dangerous" and may attack her son again if he were released. (*Id.* at p. 20).

**{¶16}** Willson testified that prior to this attack, Appellant had "pulled a gun out in a home where [her] children were sleeping, [and] pointed it at [her]." (*Id.* at p. 12). Willson moved away from Appellant and into a new home. (*Id.*) On the day at issue, Willson went to Huffman's house to eat dinner. (*Id.*) Willson reported that it took all three of them "fighting as hard as [they] could" to subdue Appellant until police arrived. (*Id.* at p. 13). Willson had been afraid that Appellant would come back to hurt her and said her children cried themselves to sleep. (*Id.*) Willson confirmed Appellant texted her before the attack indicating he wanted to hurt or kill Huffman. (*Id.* at p. 14). During the pendency of this case, Willson noted that Appellant had contacted her despite being ordered not to do so. (*Id.* at p. 15-16).

**{¶17}** Clarence Antonacci, Appellant's father, believed Appellant had changed and he apologized to the victims on his son's behalf. (*Id.* at p. 30-31). Appellant also apologized to the victims. (*Id.* at p. 40).

**{¶18}** Regarding consecutive sentences, the trial court stated:

The Court is also going to find that consecutive sentences are necessary here to protect the public from future crime by you. Consecutive sentences are not disproportionate to the seriousness of what you did in attacking these people, including one of them with a knife, and the resulting danger

that you pose to the public, again, because you can't control yourself and the fact that you drove there in a highly intoxicated state.

The Court is also going to find that these offenses were committed as part of a course of conduct, which includes the cell phone messages and such leading up to this point.

The harm caused was so great and unusual that a single term for either of the offenses adequately reflects the seriousness of what you did [sic].

Your entire history of feigned victimization shows that consecutive sentences are necessary to protect all from future criminal conduct by you.

More than the minimum sentence is necessary, appropriate and reasonable. The shortest sentence, or concurrent sentences, will not adequately punish you and also, one thing I have to consider is, I have to protect the public from future crimes by you, and I also have to teach a lesson to others that they not engage in similar conduct. So a very short sentence or non-consecutive sentences would demean the seriousness of what you've done.

The factors decreasing seriousness are greatly outweighed by those increasing seriousness. There's more likelihood of recidivism if you're given a very short or concurrent sentences.

All of my findings, I believe, are in accordance with the statutory and case law of the State of Ohio.

(*Id.* at p. 44-46).

{¶19} Also, in its June 23, 2023 sentencing entry, the trial court stated:

The Court heard in court statements * * *. The Court has also considered the record, all of the correspondence from the families, friends, and the victims, the oral statements, the Presentence Investigation Report with

attached Risk Assessment as Low, and the report from the Eastern Ohio Correction Center finding Defendant inappropriate for placement based upon his said Low score, as well as the principles and purposes of sentencing in Revised Code 2929.11 and has balanced the seriousness and recidivism factors under Revised Code 2929.12.

* * * [T]he Court finds that the factors contained in Ohio Revised Code 2929.12(B) and (D) which indicate more serious conduct and more likelihood of recidivism include the following:

1. As an adult, Defendant has misdemeanor convictions for four (4) vehicle operation violations;

2. While highly intoxicated, Defendant drove to the residence of the victims, thereby subjecting the citizens of Belmont County to the risk of serious harm;

3. Defendant admitted to another episode of operating his vehicle while being highly intoxicated;

4. Defendant can not [sic] control his alcohol consumption, resorting to intoxication as a problem solution;

5. Defendant's victims suffered serious physical and mental injuries from which they are still recovering, after Defendant broke into their residence and assaulted them, including stabbing one of the victims;

6. Defendant has offered nothing to establish mitigation for his conduct, and nothing to show any ability to address his obvious mental health issues;

7. Defendant shows a pattern of drug and alcohol abuse that began before he reached the age of seventeen, which is directly related to these offenses. That history includes Marihuana [sic] (16), Alcohol (17), and Cocaine (18). His drug of choice is Alcohol;

Case No. 23 BE 0030

8. Defendant violated his bond conditions indicating again that he can not [sic] control himself;

9. Defendant's relationship with the victims facilitated the offenses; and

10. Defendant has not shown genuine remorse. Defendant appears to believe that he is the victim, here.

In accordance with Ohio Revised Code 2929.12(C) and (E), which suggest that his conduct is less serious and that recidivism is less likely, the Court finds that these are Defendant's first felony convictions.

The Court further finds in accordance with Ohio Revised Code 2929.11(A), that the overriding purposes of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender, using the minimum sanctions that the Court determines accomplishes these purposes, without imposing an unnecessary burden on State or local government resources.

The Court further finds that consecutive sentences are necessary to protect the public from future crime and to punish Defendant. Consecutive sentences are not disproportionate to the seriousness of Defendant's conduct in attacking his victims with a knife and the resulting danger he poses to the public, given, again, Defendant's complete inability to control himself.

His offenses were committed as part of more than one courses of conduct involving his victims, and the harm caused was so great and unusual that no single prison term for either of the offenses committed adequately reflects the seriousness of Defendant's criminal conduct. His entire history of feigned victimization shows that consecutive sentences are necessary to protect all from future criminal conduct by Defendant.

In light of that guidance, the Court finds that more than the minimum sentence is deemed necessary and is otherwise appropriate and reasonable. Therefore, in accordance with Ohio Revised Code 2929.13(D) the Court finds that the shortest sentence or concurrent sentences will not adequately punish Defendant and protect the public from future crimes and will demean the seriousness of the offenses and that factors decreasing seriousness are greatly outweighed by those increasing seriousness and that there is more likelihood of recidivism if Defendant is given a shorter or concurrent sentence.

The Court makes all findings based upon the sentencing factors contained in Ohio Revised Code 2929.11, 2929.12, 2929.13 and 2929.14[.]

(6/23/2023 Sentencing Entry, p. 2-5).

{¶20} The record in this case reflects no sentencing error. The trial court gave due deliberation to the relevant statutory considerations and properly advised Appellant regarding post-release control. The court considered the purposes and principles of felony sentencing under R.C. 2929.11, balanced the seriousness and recidivism factors under R.C. 2929.12, and considered the prison factors under R.C. 2929.13.

{¶21} In addition, the trial court made the requisite consecutive sentence findings, which are supported by the record, at the sentencing hearing and in its sentencing entry. The court found that consecutive sentences are necessary to protect the public from future crime or to punish Appellant and that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public. R.C. 2929.14(C)(4).

{¶22} Specifically regarding R.C. 2929.14(C)(4)(b), the record establishes Appellant committed his offenses as part of more than one courses of conduct involving his victims; while highly intoxicated, Appellant drove to the residence of the victims, thereby subjecting them and other citizens to the risk of serious harm; Appellant admitted to another episode of operating his vehicle while being highly intoxicated; Appellant cannot control his alcohol consumption; the victims suffered serious physical and mental harm after Appellant broke into the residence and assaulted them; Appellant stabbed

Case No. 23 BE 0030

one of the victims, Huffman, in the neck with a knife; Appellant has offered nothing to establish mitigation for his conduct; Appellant's relationship with the victims facilitated the offenses; Appellant has not shown genuine remorse and appears to believe he is the victim; and the harm caused to the victims was so great or unusual that a single prison term cannot adequately punish Appellant due to the seriousness of his conduct.

{¶23} Accordingly, the trial court considered R.C. 2929.11, 2929.12, and 2929.13, and its imposition of consecutive sentences pursuant to R.C. 2929.14(C)(4)(b) is supported by the record. The court did not err in finding that consecutive sentences are necessary to protect the public from future crime or to punish Appellant and that consecutive sentences are not disproportionate to the seriousness of his conduct and to the danger he poses to the public. R.C. 2929.14(C)(4).

## CONCLUSION

{¶24} For the foregoing reasons, Appellant's sole assignment of error is not well-taken. The June 23, 2023 judgment of the Belmont County Court of Common Pleas consecutively sentencing Appellant to a total indefinite prison term of 14 years (minimum) to 18 years (maximum) for felonious assault and aggravated burglary following a guilty plea is affirmed.


Robb, P.J., concurs.

Hanni, J., concurs.


Case No. 23 BE 0030

_____

For the reasons stated in the Opinion rendered herein, the assignment of error is overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be waived.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure.  It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**